Appellant, Shelley A. Averette, was indicted by a Talladega County Grand Jury in May 1984 for the intentional killing of James E. Garnett, in violation of § 13A-6-2, *Page 632 
Code of Alabama 1975. On March 31, 1984, a jury adjudged appellant guilty as charged in the indictment and the court subsequently sentenced him to 40 years in the penitentiary upon application of the Habitual Felony Offender Act.
The State's evidence established that the victim was killed by a shotgun blast to the mid-stomach area. Both briefs assert that the victim was "seated in the defendant's automobile"; however, the record indicates that the victim was standing outside appellant's automobile when the blast occurred. Appellant admitted control of the shotgun at the time it was fired, but denied that he intended to kill the victim. Appellant argued to the jury that the gun went off accidentally and offered further evidence from additional witnesses that the shotgun in question was faulty and had accidentally fired on numerous occasions. The State presented expert testimony contradicting appellant's contentions that the shotgun was faulty.
Only one contention of error has been raised on this appeal. Appellant maintains that the trial court committed reversible error when it refused to grant appellant's motion for a mistrial based on certain comments made by the prosecutor during closing arguments. The record of these comments is as follows:
 "(AT THIS TIME MR. RUMSEY MADE FINAL CLOSING ARGUMENT ON BEHALF OF THE STATE OF ALABAMA.) "DURING MR. RUMSEY'S CLOSING STATEMENT:
 "MR. OGLETREE: Judge, we object to that. That is stating facts that are not in evidence. Mr. Rumsey said, `We know this. That his brother wasn't found guilty.'
"MR RUMSEY: You went into it.
 "MR. OGLETREE: What I argued was that he was a rapist and the testimony from the stand by Vera Wilson to that effect. And I move for a mistrial.
 "BY THE COURT: Ladies and gentlemen of the jury, what has happened in another case is not for you to consider in this case. There has been testimony about different things relative to the other case, but don't consider anything about another case. The only thing you should consider in this case is the evidence that came to you in this case and nothing else. I'll overrule the motion.
 "MR. RUMSEY: Ladies and gentlemen, let me state this. If I misstate some of the evidence. I am calling it to you as I remember it. If you don't remember it like that you use your own recollection.
 "(MR. RUMSEY CONCLUDED HIS CLOSING ARGUMENT TO THE JURY.)"
The State's theory of the case revolved around an alleged rape involving the victim and his brother William Garnett. Mrs. Vera Wilson testified that she is appellant's aunt and that the Garnett brothers had raped her. Two witnesses testified that appellant had threatened the life of the Garnett brothers, one stating that appellant "told me that as soon as they get out of jail he was going to kill them."
James Garnett had been released from jail the day prior to his death. Appellant had seen Garnett at approximately 7:30 the morning of the incident at a local bootlegger's home. According to the owner of the home, Mrs. Johnson, she and the victim had been up all night reading scripture from the Bible. Mrs. Johnson could not explain why the victim had a .20 blood alcohol level, but other witnesses indicated that the victim may have consumed a beer or two.
Appellant returned to Mrs. Johnson's home around 9:00 that morning and requested the victim to come outside with him. According to appellant they were going to get some beer and no hostility existed. There were no eyewitnesses to the shooting, which occurred after the two left the house.
At trial many references were made to the alleged rape. The defense first brought up the issue when, on cross-examination of Mrs. Johnson, the defense attorney asked if she knew why James Garnett had been in jail. Mrs. Vera Wilson, appellant's *Page 633 
aunt, testified on behalf of appellant and on direct examination was questioned about the rape in detail. There was, however, no testimony concerning whether either of the Garnett brothers was ever convicted of the rape in question.
As a general rule, where facts are stated to the jury "of which there [is] no evidence whatever, and such facts are of a character . . . calculated to impress the minds of the jurors, and to injure the opposing party, such [facts] are clearly improper argument and grounds for reversal." Taylor v. State,54 Ala. App. 353, 356, 308 So.2d 714 (1975). See also Smith v. State,261 Ala. 270, 73 So.2d 916 (1954). Each case "must be scrutinized in light of the issues, parties, and general circumstances of the particular case." Carpenter v. State, 404 So.2d 89, 97
(Ala.Crim.App. 1980), writ quashed, 404 So.2d 100 (Ala. 1981). See also Madison v. State, 55 Ala. App. 634, 318 So.2d 329, cert. denied 294 Ala. 764, 318 So.2d 337 (1975), and cases cited therein. "Statements of counsel in argument to the jury must be viewed as in the heat of debate, and such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict." Sanders v.State, 426 So.2d 497, 509 (Ala.Crim.App. 1982). "It is not every improper remark to which objection is not sustained which will require reversal." Flint v. State, 370 So.2d 332, 334
(Ala.Crim.App. 1979).
"The trial judge is in a better position than an appellate court to determine whether the remark was so prejudicial as to be ineradicable. Moreover, there is a prima facie presumption against error where the trial court immediately charges the jury to disregard the prosecutor's improper remark." Wilson v. State,428 So.2d 197, 200 (Ala.Crim.App. 1983); see also Hammins v.State, 439 So.2d 809 (Ala.Crim.App. 1983). In Madison,55 Ala. App. at 641, 318 So.2d at 336, this court stated:
 "Statements by prosecutors of facts not in existence, or which have been excluded from evidence, are improper per se. Such statements are grounds for reversible error where their impact upon the jury would be so prejudicial that proper instruction by the trial court would not eradicate their prejudicial effect. Where the objectionable statement is made as a fact, unsupported by any legal evidence, pertinent to the issue, and its natural tendency is to influence the finding of the jury, there is sufficient ground for a reversal."
See also Smith v. State, 261 Ala. 270, 73 So.2d 916 (1954);Sanders; Flint; Taylor.
In the case sub judice we begin with a presumption in favor of the trial court's ruling. It is true that the improper statement was made as a fact, unsupported by any legal evidence. We note, however, that testimony concerning whether or not a third party who was not involved in the instant case was found guilty of some unrelated crime, has no bearing on the issue of appellant's guilt or innocence in the murder of James Garnett. Whether James and/or William Garnett raped Vera Wilson was not at issue in appellant's trial. Furthermore, we do not believe that this statement would have a "natural tendency to influence the finding of the jury" where the testimony adduced at trial tended to show thatappellant believed the brothers had raped his aunt. We do not find prejudice; however, arguendo, if any prejudice did result, it was counteracted by the timely and appropriate instruction from the court to disregard any evidence "relative to the other case." [W]hether the statement or remark is so highly prejudicial as to require a mistrial is within the discretion of the trial court, and its determination of that issue should not be reversed unless its discretion is abused." Keener v. State, 347 So.2d 398,400 (Ala. 1977). We find no abuse of discretion in the case at bar.
For the foregoing reasons this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 634