547 So.2d 582 (1988)
Long Van NGUYEN, Thanh Ba Tiet, and Bi Tran
v.
STATE.
1 Div. 45.
Court of Criminal Appeals of Alabama.
May 10, 1988.
On Return to Remand September 20, 1988.
Rehearing Denied September 20, 1988.
Certiorari Denied December 2, 1988.
Rehearing Denied April 28, 1989.
Certiorari Denied July 14, 1989.
*583 Raymond A. Pierson, Mobile, for appellant Long Van Nguyen.
Richard R. Williams of Davis, Williams & Hudgins, Mobile, for appellant Than Ba Tiet.
Barbara A. Brown, Mobile, for appellant Bi Tran.
Charles A. Graddick, Atty. Gen., and Jane LeCroy Brannan, Asst. Atty. Gen., for State.
Alabama Supreme Court 88-2.
Alabama Supreme Court 88-1046.
McMILLAN, Judge.
The appellants were indicted for six counts of robbery in the first degree; count five of the indictment was nolprossed. They were found guilty of robbery in the first degree as charged in the remaining five counts of the indictment and were sentenced to 25 years' imprisonment. Ding Van Nghi was a co-defendant at trial, but is not a party in this appeal.[1]
Son Do testified that on January 13, 1985, he was having a party at his apartment in Bayou La Batre. Approximately ten people were present. Son Do testified that there was a knock at his door around 1:30 a.m. He walked out of his bedroom and observed three men with guns, who *584 demanded that everyone remove their wallets and money. Son Do only had $5.00, which he had put into a sheet which was used to collect the money. Son Do identified the three appellants in court as the men who committed the robbery. He further testified that the men ran out of his apartment and that he saw a car drive away. No one gave chase. He reported the crime the following day. Son Do testified that when the robber or robbers[2] pointed the gun at him, it was approximately one inch away from him and he was able to see the faces of the gunmen.
Tiep Nhu Do, the father of Son Do, testified that he was present at the apartment during the robbery. He stated that at approximately 1:00 a.m. there was a knock at the door and that Toi Nguyen, a guest, opened the door. A man with a gun pushed Toi back inside the room and two other men with guns followed. Money from the people present, as well as their wallets, was laid on a sheet. The gunmen pushed everyone into a corner and kept their handguns pointed at the victims. Tiep Nhu Do identified a paycheck that was taken from him by the robbers. He testified that he watched from the door as the robbers left, as he was too afraid to chase them. The next morning he accompanied his son to report the crime. In court, he only identified Bi Tran and Long Van Nguyen as two of the robbers.
Toi Nguyen identified all three appellants as the robbers. He testified that the men remained in the apartment approximately 15 minutes.
Lam Van Chenh testified that the robbers took $370 from him. He identified Long Van Nguyen as the robber who pointed a gun at him and Bi Tran as the gunman who searched his pockets.
Than Hun Nguyen testified that the robbers took $50 from him. He identified Bi Tran, Long Van Nguyen, and Thanh Ba Tiet as being the gunmen.
Officer Johnny Joyner, of the Bayou La Batre Police Department, testified that he was on patrol during the early morning of January 13, 1985. He observed a silver 1976 Ford Granada with Louisiana plates run a stop sign at a high rate of speed. The car then crossed into a ditch and came out heading in the other direction. Officer Joyner pulled the car over and asked the driver for his driver's license. Officer Joyner testified that the driver did not fit the description or the photograph on the driver's license; Officer Joyner testified that he wrote the driver a citation for running a stop sign and took him to the station in order to docket him for criminal impersonation. He further testified that when the individual got out of the passenger's side of the vehicle, he observed money and a payroll check lying on the seat. He further testified that he took the money and the check and that none of the four Oriental males who were present in the car wanted to claim the items. The other passengers followed Officer Joyner and the driver to the police station in order to secure their friend's release. Officer Joyner identified appellant Bi Tran as the driver of the vehicle and the other two appellants as passengers in the vehicle. Officer Joyner testified that he placed the driver in jail and advised the other three males of the requirements to get the driver out of jail. After talking to Detective Parker, the three males left the station.
Detective William D. Parker testified that he was called by Officer Joyner in the early morning of January 13 concerning this case. He fingerprinted and photographed the four men who had been in the car because of information he had received regarding another previous robbery; he identified the three appellants as having been three of those men.
Investigator Charles Windham, of the Biloxi, Mississippi, Police Department, testified that he located a Ford Granada with a Louisiana tag after being given a description by Detective Parker. He located the vehicle at a home in Biloxi at approximately 1:30 p.m. on January 14. Four males were arrested and returned to Bayou La Batre.
*585 After the robbery was reported at approximately 11:30 a.m. on the following morning, Detective Parker conducted a photographic lineup, using 12 photographs. He told the victims that the robbers may or may not be included in the photographs. Detective Parker further stated that he told the victims "[n]othing more but to examine the pictures and to be certain of who they picked."
The appellants raise separate issues on appeal. The first four issues concern the identification procedures.

I RAISED BY THANH BA TIET
The appellant alleges that the Bayou La Batre Police Department's policy of taking pictures and fingerprints without consent, or allegedly without any basis for an arrest, violated his rights against unreasonable search and seizure. The appellant's fingerprints were never admitted into evidence and his photograph was admitted only as an exhibit for an in camera hearing. Furthermore, what an individual knowingly exposes to the public is not protected under the Fourth Amendment. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world." United States v. Dionisio, 410 U.S. 1, 14, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 (1973).
"The Court in Dionisio likened the sound of a person's voice to a person's `facial characteristics' which are also `constantly exposed to the public.' It does not seem open to question, therefore, that mere observation of those characteristics or other physical characteristics does not constitute a Fourth Amendment search. Moreover, it is no search to `record' those characteristics, in effect, by taking a picture of the individual.
"It is noteworthy that the Dionisio Court also drew an analogy between taking voice exemplars and taking fingerprints, thus suggesting that fingerprinting is no search. (Although it is well established that the taking of fingerprints is a permissible incident to a lawful arrest, courts have rarely addressed the question of whether the act of fingerprinting is itself a search.) This dictum in Dionisio might be considered suspect, however, for the Court's reliance upon Davis [v. Mississippi, 394 U.S. 721, 727, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676 (1969) ] for support is not as sound as it might first appear. The language quoted from Davis was not included therein for the purpose of showing that fingerprinting is not a search but rather for the purpose of showing that detention for such a limited intrusion might `comply with the Fourth Amendment even though there is no probable cause in the traditional sense.' Yet, the Court has more recently referred to fingerprinting as nothing more than obtaining `physical characteristics ... constantly exposed to the public,' [Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) ] and lower courts have upheld the fingerprinting of grand jury witnesses without a showing of probable cause."
LaFave, Search and Seizure, § 2.6(a) (1987) [footnotes omitted.] See also United States v. Holland, 438 F.2d 887 (6th Cir.1971) (photographing of person who voluntarily came to police station did not constitute search); State v. McDowell, 301 N.C. 279, 271 S.E.2d 286 (1980), cert. denied, 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 220 (1981) (photographing a person who reported as required to his parole officer was not a search).
The taking of the appellant's photograph and fingerprints by the Bayou La Batre Police Department, because of information that a previous robbery under investigation had been perpetrated by Vietnamese, although the appellant was not under arrest, did not constitute an unconstitutional search. Moreover, because the evidence was never admitted at trial, the appellant suffered no prejudice.

II RAISED BY THANH BA TIET
The appellant argues that his rights against self-incrimination were violated *586 when the Bayou La Batre Police officers took his picture and fingerprints without his consent, without advising him of his rights, and without any basis for an arrest. However, the Fifth Amendment applies only to evidence of a testimonial or communicative nature. "[T]he privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966) (in which the Supreme Court held that the withdrawal of blood for use in a chemical analysis was not a violation of the Fifth Amendment privilege against being compelled to testify against oneself). "[B]oth federal and state courts have usually held that it [the Fifth Amendment] offers no protection against compulsion to submit to fingerprinting, photographing or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." Schmerber v. California, supra, at 764, 86 S.Ct. at 1832. Furthermore, being placed in a lineup does not equate with being compelled to testify against oneself. Freeland v. State, 43 Ala.App. 406, 191 So.2d 245, 249 (1966). For these reasons, the Fifth Amendment offers no protection against compulsion to submit to photographing or fingerprinting.

III RAISED BY LONG VAN NGUYEN
The appellant submits that the State failed to prove his identity as a participant in the robbery. The appellant submits that none of the victims positively identified him as one of the robbers. The record indicates that because of the difficulty in understanding the Vietnamese names, the victims were asked to identify the robbers in court by "fingering," apparently pointing to or touching, the robbers. In order to preserve the identity of the parties being indicated as the robbers for the record, the prosecutor would state the names. The record indicates that the prosecutor stated that the witness Than Hun Nguyen[3] identified Bi Tran, Thanh Ba Tiet, and Can Van Nguyen as being the gunmen. Can Van Nguyen was one of the victims. It is clear from the record that the prosecutor intended to name Long Van Nguyen as having been indicated. The appellant further contends that because the prosecutor in naming the individuals designated by the victims as having been the gunmen identified "Lon Van Nguyen" rather than Long Van Nguyen. There is no indication in the record that anyone named "Lon Van Nguyen" was connected with this case. From the record it is clear that the prosecutor intended Long Van Nguyen. The record indicates that in stating that the man identified was "Lon Van Nguyen," the prosecutor further identified him as this defendant. Cf. Oates v. State, 38 Ala.App. 158, 79 So.2d 61 (1954), reversed on other grounds, 262 Ala. 182, 79 So.2d 64 (1955). "`Whether one name is idem sonans with another, is not a question of orthography, but of pronunciation, "depending less upon rule than upon usage," and when it arises in evidence on the general issue, is a question of fact for the determination of the jury, not for the decision of the court.'" Id. 79 So.2d at 63.)
Moreover, aside from the in-court identifications by the victims, there was evidence that the appellant was identified by the victims in an out-of-court photographic display.
"It is part of the fact finding function of the jury to decide the issue of identity." Agee v. State, 429 So.2d 654, 655 (Ala.Cr. App.1982). "The question of identification was entirely a question of fact for the jury, and the evidence presented was sufficient to sustain their conclusion. Seals v. State, 271 Ala. 142, 122 So.2d 513 (1960); Aaron v. State, 271 Ala. 70, 122 So.2d 360 (1960)." Dozier v. State, 415 So.2d 3, 5 (Ala.Cr.App. 1982).

IV RAISED BY BI TRAN
The appellant argues that the trial court erred in denying his motion to suppress *587 his in-court identification because it had been tainted by the allegedly suggestive pre-trial photographic lineup and the view of him at the jail by the victims. The appellant bases his argument on the fact that one of the victims, Son Do, remained in the room with Detective Parker in order to serve as an interpreter while each of the victims individually viewed the 12 photographs and made their identifications. Moreover, the appellant argues that because Son Do testified that he saw Bi Tran at the jail just prior to being shown the pictures, the photographic lineup was overly suggestive. However, Son Do also testified that he already knew Bi Tran before the robbery.
"There exists a due process right to the exclusion of unreliable identification testimony that results from procedures that are both unnecessarily suggestive and conducive to irreparable mistaken identification. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The primary focus in the due process inquiry is on the reliability of the identification and identification evidence derived from an unnecessarily suggestive source need not be excluded if the totality of the circumstances indicates that it is reliable. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
"In Manson, the Supreme Court adopted the five factors enumerated in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), to determine the reliability of the identification; the witness' opportunity to view the criminal at the time of the crime; the witness' degree of attention at the time of the crime; the accuracy of the witness' prior description of the criminal; the witness' level of certainty when identifying the suspect at the confrontation; and the length of time between the crime and the confrontation.
"... After Manson, courts have employed a two-step analysis to determine whether due process has been violated by the admission of identification testimony. `A defendant first must prove that the identification procedure was unnecessary and impermissibly suggestive, and courts then will consider the reliability of the identification by balancing the Biggers factors against the suggestiveness of the procedure.' Project: Thirteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeal 1982-83, 72 Geo.L.J. 249, 334 (1983), citing United States v. Briggs, 700 F.2d 408, 412 (7th Cir.), cert. denied, 461 U.S. 947, 462 U.S. 1110, 103 S.Ct. 2129, 2463, 77 L.Ed.2d 1307 [77 L.Ed.2d 1340] (1983)."
Cochran v. State, 500 So.2d 1161, 1169 (Ala.Cr.App.1984), affirmed in pertinent part, reversed in part, 500 So.2d 1179 (Ala. 1985). See also Coleman v. State, 487 So.2d 1380 (Ala.Cr.App.1986).
There were no pre-trial identification procedures employed in this case so suggestive or defective as to render the in-court identifications inadmissible as a matter of law. Therefore, we need go no further. "It is only when the pre-trial procedures used are unnecessarily or impermissibly suggestive that the `totality of the circumstances' then need be analyzed under Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)." Coleman v. State, supra, at 1388. Because Son Do already knew appellant Bi Tran, we do not find that the reliability of his identification would have been affected by viewing the appellant at the jail. See Pearson v. State, 455 So.2d 963, 966 (Ala.Cr.App.1984) ("[w]e do not view it as significant that, in [the victim's] work as a police radio dispatcher, he later saw the appellant around the jail"). Nor do we find that the photographic lineup was unduly suggestive because Son Do remained to translate for each of the victims. Detective Parker testified that Son Do was the only victim with a working understanding of the English language. See People v. Dudley, 81 Cal.App.3d 866, 146 Cal.Rptr. 767 (1978) (no error or unfairness found in the pre-trial procedures used to identify the defendant where the victim spoke no English and her son-in-law, who was also a victim of the robbery, acted as interpreter).

*588 V RAISED BY LONG VAN NGUYEN
The appellant argues that the trial court impermissibly commented on the evidence by informing the jury that in his opinion the evidence did not justify the finding of a charge on a lesser included offense. The record indicates that following the trial court's oral charge to the jury and before the jury retired for deliberations, a juror asked the court whether it would be possible to find any of the defendants guilty of a lesser crime. The following transpired at trial:
"THE COURT: Under these circumstances I would think not, and the reason I say that to you is this; in the crime of robbery in the first degree a person must be armed with a deadly weapon.
"JUROR: That's what I mean.
"THE COURT: I understand. But the only way a person would not be guilty of that is if he was not aiding and abetting. If he aided and abetted he would be guilty of the crime, assuming someone was guilty of it with a gun.
"JUROR: What I'm saying is what if we thinkis it possible that he could be guilty of robbery but not with a deadly weapon?
"[DEFENSE COUNSEL]: Your Honor
"JUROR: Could we find that verdict?
"THE COURT: [Defense counsel], just a moment.
"JUROR: Is that a possibility for us to come back with?
"THE COURT: All right. I'm going to change the form and I'm going to let you consider that since you've raised it as an issue, assuminglet me take up one matter with the attorneys and I'll do that, I think I may do that. If so, it would be robbery in the second degree and let me define that for you."
Thereafter, the trial court charged the jury as to robbery in the second degree and each of the defense lawyers responded that they were satisfied with the trial court's instructions.
The trial judge's statement was not an impermissible comment on the evidence; rather he was initially refusing to charge on a lesser-included offense where he found that the evidence produced would not support such an offense. "The court does not invade the province of the jury in a criminal prosecution by stating that there is or is not evidence of particular facts when such is the case." Seibold v. State, 287 Ala. 549, 562, 253 So.2d 302 (1970).
"A charge upon the effect of the evidence is a charge which instructs the jury that certain facts in issue have been proved, or that certain evidence in the case does or does not establish a certain fact or facts in dispute, or directs the jury what their finding on an issue of fact must be if they believe the evidence in the case. Wyman v. State, 47 Ala. App. 643, 259 So.2d 849 (1972); Dunn v. State, 8 Ala.App. 410, 62 So. 996 (1913)."
Yarber v. State, 437 So.2d 1319, 1326 (Ala. Cr.App.1981), reversed on other grounds, Ex parte Yarber, 437 So.2d 1330 (Ala. 1983).
A trial court in its charge to the jury may state the tendencies of the evidence for the State and the defendant without invading the province of the jury. Crain v. State, 166 Ala. 1, 52 So. 31 (1910). "In the admission of evidence the court necessarily passes upon its tendency as proof as a matter of law." Crain, 52 So. at 32. The trial court's statement was not intended to control the jury in its consideration of the weight to be given to the evidence.

VI RAISED BY LONG VAN NGUYEN AND BI TRAN
The appellants argue that the trial court erred in allowing additional evidence to be presented after the jury had been charged. The record indicates that following the trial court's oral charge to the jury, the judge asked if any juror had a question or did not understand part of the charge. One of the jurors then asked if they could have photographs of the defendants labeled with their names. The trial court discerned that no photographs of the defendants were introduced into evidence. One of the defense lawyers noted that he planned to ask the trial court to identify the defendants before the jury retired. The trial *589 court stated, "I considered that that might be a problem to you and I have no problem in doing that. Does anyone have a pencil and a piece of paper? Perhaps you can recall the defendant by the attorney representing him." The attorney for defendant Long Van Nguyen objected, stating that it would constitute the introduction of further evidence after the close of the case and would place too much emphasis "on one matter or the other." The juror then stated that the reason for his request was because he was having a problem remembering "who is who." The trial court then asked each attorney to stand and introduce his client by name. The defense counsel for Long Van Nguyen again objected after the jurors left the courtroom, stating that it was error to present additional evidence after the close of the case. The trial judge stated, "Well, I think the record ought to disclose that even the Court has become confused as to which particular defendant bears which name and I think the jury's request was certainly reasonable." There is no indication in the record that pictures were ever given to the jurors.
"The rule is that it is error to reopen the case to allow either party to supply additional evidence after the case has been submitted to the jury. Harris v. State, 371 So.2d 979 (Ala.Cr.App.), cert. denied, 371 So.2d 984 (Ala.1979). Section 15-14-4, Code of Alabama 1975." Jolly v. State, 405 So.2d 76, 77 (Ala.Cr.App.1981). In the instant case, although the oral charge had been given, the case was not yet submitted to the jury.
Moreover, this case is distinguishable from Batteaste v. State, 449 So.2d 799 (Ala.Cr.App.1984), and Harnage v. State, 290 Ala. 142, 274 So.2d 352 (1972), in that the evidence did not relate to the "person" of the appellant. Cf. Batteaste v. State, supra (wherein the defendant was required to allow the jury to view his scar); Harnage v. State, supra (wherein the trial court did not allow the jury to view the defendant's hands after the case had been submitted to the jury). In this case, the jury did not request the admission of new evidence or to view some aspect of the appellant's person which might have new evidentiary value; rather the jurors sought to confirm each defendant's identity. It did not constitute the introduction of additional evidence, nor was it violation of the appellants' constitutional rights. "The law is clear that merely requesting a defendant to stand for purposes of identification before the jury venire is not a violation of his constitutional privilege against self-incrimination." Suggs v. State, 403 So.2d 303 (Ala.Cr.App.), writ denied, 403 So.2d 309 (Ala.1981), cert. denied, 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982).

VII RAISED BY BI TRAN
The appellant argues that the trial court failed to cure any error resulting from the prosecutor's reference during his closing argument to the race of this appellant. The following transpired during the prosecutor's closing arguments:
"[PROSECUTOR]: We need to think about the crime of robbery. We've got five men that walked into this courtroom. They haven't been in this country very long. They came here for freedom. Freedom to be able to make a living how they want to make a living, own their own business, send their kids to school. But more than anything freedom from roving gangs, roving gangs of gunmen holding `em up. Now where they came from in Vietnam see the roving gangs
"[DEFENSE COUNSEL FOR DEFENDANT DING VAN NGHI]: I'm gonna object. There's no evidence what happens in Vietnam or what the roving gangs are.
"THE COURT: Sustained.
"[COUNSEL FOR LONG VAN NGUYEN]: Judge, I'd move for a mistrial. It's highly prejudicialhe knows iton the grounds of prosecutorial misconduct.
"THE COURT: Motion denied."
Subsequently, during the prosecutor's rebuttal argument, the following transpired:
"[PROSECUTOR]: They get robbed by these four guys here, they come to court. They're Vietnamese, they're strangers. They're trying to assimilate and we can't expect to treat everything with the same *590 amount of severity as we do. We can't expect that. The things that we don't understand why they might get upset about, they do, and vice-versa. Being robbed, it happens in Vietnam.
"THE COURT: [Prosecutor], I hate to interrupt you, but how long are you going to be?
"[PROSECUTOR]: Minutes. Minutes, judge. I'll wrap it up.
"[COUNSEL FOR DEFENDANT DING VAN NGHI]: Judge, you've already sustained my objection on what happens in Vietnam. He's starting again on it.
"THE COURT: Well, go ahead, [Prosecutor]."
There was no adverse ruling as to the prosecutor's argument on rebuttal. Stringfellow v. State, 485 So.2d 1238 (Ala. Cr.App.1986); Breedlove v. State, 482 So.2d 1277 (Ala.Cr.App.1985). Furthermore, the trial court sustained defense counsel's objection to references to occurrences in Vietnam. Channell v. State, 477 So.2d 522 (Ala.Cr.App.1985).
The trial court's denial of the motion for mistrial was not an abuse of discretion. "`Where the objectionable statement is made as a fact, unsupported by any legal evidence, pertinent to the issue, and its natural tendency is to influence the finding of the jury, there is sufficient ground for reversal.'" Averette v. State, 473 So.2d 631, 633 (Ala.Cr.App.1985), quoting Madison v. State, 55 Ala.App. 634, 641, 318 So.2d 329, 336, cert. denied, 294 Ala. 764, 318 So.2d 337 (1975). We do not believe this statement would have a "natural tendency to influence the finding of the jury." Id. "`[T]he trial court is best able to assess the issues, parties, and circumstances of each case and determine the potential prejudicial impact of the improper argument.' Taylor v. State, 408 So.2d 551, 553 (Ala.Cr.App.1981), cert. denied, Ex parte Taylor, 408 So.2d 555 (Ala.1982)." Hammond v. State, 502 So.2d 843, 845 (Ala.Cr. App.1986), cert. denied, 482 U.S. 917, 107 S.Ct. 3193, 96 L.Ed.2d 681 (1987). "`The entry of a mistrial is not lightly to be undertaken. It should be only a last resort, as in cases of otherwise ineradicable prejudice. Where error is eradicable a mistrial is too drastic and is properly denied. Chillous v. State, 405 So.2d 58 (Ala.Crim. App.1981); Van Antwerp v. State, 358 So.2d 782 (Ala.Crim.App.), cert. denied, 358 So.2d 791 (Ala.1978); Thomas v. Ware, 44 Ala.App. 157, 204 So.2d 501 (1967).' Woods v. State, 460 So.2d 291, 296 (Ala.Crim.App. 1984)." Brown v. State, 481 So.2d 1173, 1175 (Ala.Cr.App.1985). The comment cannot be found to be so offensive and prejudicial that it constitutes fundamental error vitiating the result of the trial.

VIII RAISED BY BI TRAN
The appellant argues that the trial court erred in admitting a payroll check at the close of the State's case because the State allegedly failed to prove a proper chain of custody for the admission of the check. The appellant bases his argument on testimony by Officer Joyner when he stated that, although the check had "void" written across it when it was shown to him at trial, that word had not been there when he retrieved the check from the car. The following transpired during the direct examination of Officer Joyner:
"Q: I show you what's been marked as State's Exhibit Number 2. I'd ask you to take a look at that. Tell me if you recognize it.
"A: Yes, sir. This is the check that I got from out of the car.
"Q: Okay. Is there any difference between that check as it is now as when it was taken out of the car?
"A: Yes, sir. It's got `void' written across it.
"Q: Okay. Did you do that?
"A: No, sir.
"Q: Okay. Do you know why that was done?
"A: Yes, sir.
"[COUNSEL FOR APPELLANT THANH BA TIET]: Objection.
"THE COURT: Sustained.
"Q: Okay. You didn't do that?
"A: No, sir.
"Q: Okay. Was it like that when you picked it up out of the car?
*591 "A: No, sir.
"Q: Can you tell us what's written on that check?
"[COUNSEL FOR APPELLANT LONG VAN NGUYEN]: Judge, I would object at this time to any further testimony about anything taken from the car for the reasons we stated at the hearing and in my motion I filed with the court. Move to strike any previous testimony we've heard up to this point with regard to anything taken or seized from the car or any of these defendants for the reasons we've previously stated.
"THE COURT: All right. It's overruled and you'll have a continuing objection on those grounds.
". . .
"Q: Is this check in the same or similar condition as it was the night you took it out of the car?
"A: Yes, sir, it's the same.
"Q: Okay. Is it in fact fairlyis it the same check that was taken from the car?
"A: Yes, sir.
"[PROSECUTOR]: I'd offer it at this time, Judge.
"[COUNSEL FOR APPELLANT BITRAN]: Your Honor, I'd object to it coming into evidence. The proper foundation has not been laid for its introduction nor has the chain of custody been established on this item.
"THE COURT: Overruled. Mark it in.
"[COUNSEL FOR APPELLANT DING VAN NGHI]: My objection is that if I understand there is a written notation that was placed on the check after this officer allegedly got it in his possession; void.
"THE COURT: You said it was in the same condition as it was at the time you saw it?
"A: No, sir. Other than void.
"THE COURT: That's the only thing?
"A: That's the only difference.
"[COUNSEL FOR APPELLANT DING VAN NGHI]: I object to it.
"THE COURT: All right. Overruled."
"The purpose for requiring that chain of custody be established is to show a reasonable probability that there has been no tampering with an item of evidence. Gwin v. State, 425 So.2d 500 (Ala.Cr.App.1982). The chain of custody need not be proven to an absolute certainty. Sims v. State, 428 So.2d 162 (Ala.Cr.App.1982)."
Blanco v. State, 485 So.2d 1217, 1219 (Ala. Cr.App.1986).
"In passing upon the admissibility of such evidence, `the trial judge should consider the nature of the article and the circumstances surrounding its preservation and custody,' and permit its introduction where continuity of possession is `sufficiently established to afford ample assurance of ... authenticity.' Washington v. State, 339 So.2d 611, 615 (Ala.Crim.App.), cert. denied, 339 So.2d 616 (Ala.1976) (citations omitted)." Magwood v. State, 494 So.2d 124, 144 (Ala.Cr.App.1985) affirmed, 494 So.2d 154 (Ala.1986), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). See also Oliver v. State, 479 So.2d 1385, 1390 (Ala.Cr.App.1985).
"The requirement is only that the article be in `substantially the same condition.' Hodges v. State, 48 Ala.App. 217, 224, 263 So.2d 518 (1972) (emphasis added) (shotgun admissible despite fact that lever broken off by State toxicologist). It need not be in exactly the same condition.
"`It is not necessary that an object or article which is offered in evidence should be in precisely the same condition at the moment of its offer as at the time when it played a part in the occurrence which gave rise to its offer in evidence, but the change in its condition must not have been wrought for unjustifiable purposes, and it must not be of sufficient moment that the exhibit will mislead.' 29 Am.Jur.2d Evidence, Section 774 (1967).
"`The determination of whether there has been a change, so substantial or material, in an article or object, that it should not be admitted rests largely in the discretion of the trial court, and it is not necessary that the article be identically the same as at the time in *592 controversy.' 32 C.J.S. Evidence § 607 (1964). As with photographs, `[t]he fact that the conditions as shown in the photograph are not exactly the same as they were at the time of the event in suit does not render it inadmissible where the differences are immaterial and are explained so that no harm is done the opponent.' C. Gamble, McElroy's Alabama Evidence, Section 123.03(4) (3d ed. 1977)."
Farris v. State, 432 So.2d 538, 540-41 (Ala. Cr.App.1983).
Although Officer Joyner was not allowed to testify as to the reason that "void" was written across the check, he did testify that he knew that it had happened. He testified that the "void" was not written on the check when he retrieved it from the car. It was most likely placed on the check in order to insure that it would not be cashed or used for illegal purposes.

IX RAISED BY BI TRAN
The appellant argues that the trial court erred in denying his motion for a directed verdict of acquittal. According to § 13A-8-41, Code of Alabama (1975):
"(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
"(1) Is armed with a deadly weapon or dangerous instrument; or
"(2) Causes serious physical injury to another.
"(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed."
According to § 13A-8-43, Code of Alabama (1975):
"(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
"(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
"(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
"Where more than one person participates in a robbery it is immaterial which one takes the property. Gray v. State, 52 Ala.App. 481, 294 So.2d 448 (1974). Nor must the evidence establish that the defendant personally committed violence against the victim or put the victim in fear. Crutcher v. State, 55 Ala.App. 469, 316 So.2d 716 (1975)." Sanders v. State, 423 So.2d 348, 351 (Ala.Cr.App.1982). Furthermore, "[a] prima facie case of robbery in the first degree may be based on the testimony of the victim. Pickett v. State, 417 So.2d 589, 591 (Ala.Cr.App.1982)." McMillian v. State, 448 So.2d 463, 464 (Ala.Cr. App.1984). Any discrepancies in the victims' testimony go to the weight of the evidence and provide a question for the jury. "[C]onflicting evidence presents a jury question not subject to review provided the State's evidence establishes a prima facie case." Reed v. State, 372 So.2d 872, 874 (Ala.Cr.App.1978), reversed on other grounds, 372 So.2d 876 (Ala.1979).
Applying the statutory requirements of robbery in the first degree to the facts of this case, it is apparent that the State made out a prima facie case and thus the question of the appellant's guilt was properly submitted to the jury. Breedlove v. State, 482 So.2d 1277, 1281 (Ala.Cr.App.1985).

X RAISED BY BI TRAN
The appellant argues that the trial court erred in denying his request for youthful offender status because the trial court failed to make any investigation or examination before the denial. The following is stated in the record concerning the appellant's request to be treated as a youthful offender:
"This day in open court came the State of Alabama by its District Attorney and the defendant in his own proper person *593 and with his attorney, Peter Scales, and thereupon in open court on this day, defendant waived trial by jury and requested to be treated as a Youthful Offender; it is ordered and adjudged by the court that the defendant's request to be treated as a Youthful Offender be and the same is hereby denied."
The court held in Morgan v. State, 363 So.2d 1013, 1015 (Ala.Cr.App.1978):
"The Youthful Offender Act vests in the trial judge almost absolute discretion to grant or deny youthful offender status after making an appropriate investigation. McClendon v. State, 341 So.2d 174 (Ala.Cr.App.1976); Section 15-19-1, Code of Alabama 1975. This act does not require a full, formal hearing or an investigation by a probation officer in every case. Clemmons v. State, 294 Ala. 746, 749, 321 So.2d 238 (1975)."
Id.
"`All that is required of the trial court, * * * is such investigation and examination of the defendant as is sufficient to enable the judge to make an intelligent determination of whether, in his discretion, the defendant is eligible to be treated as a youthful offender, rather than being tried, and if found guilty, sentenced in the normal criminal process.' Clemmons v. State, 294 Ala. 746, 749, 321 So.2d 238, 241 (1975).
"Thus some investigation and examination of the appellant by the trial judge must be conducted before the request for youthful offender treatment can be lawfully denied. Edwards v. State, 294 Ala. 358, 317 So.2d 512 (1975). This examination need not be lengthy or formal and need not proceed under any prescribed form.
". . .
". . .
"While an order denying a request for Youthful Offender treatment need not list or enumerate all the factors considered by the trial judge, it should reflect that some investigation, examination, or inquiry was had of the defendant before the request was denied."
Watkins v. State, 357 So.2d 156, 160-61 (Ala.Cr.App.1977).
In the case sub judice, not only are the reasons not listed for the denial, but the denial occurred on the same day as the request, and there is no indication of any sort of investigation or examination. Cf. Talley v. State, 504 So.2d 741, 742 (Ala.Cr. App.1987) (wherein the trial court's order stated that the cause was continued for investigation pursuant to the defendant's request to be considered under the Youthful Offender Act); Shula v. State, 465 So.2d 448, 451-52 (Ala.Cr.App.1984), reversed on other grounds, 465 So.2d 452 (Ala.1985) (wherein the report of youthful offender investigation was contained in the record); Garrett v. State, 440 So.2d 1151, 1152 (Ala.Cr.App.1983) (wherein the record reflected that the trial court ordered an investigation "for the purpose of determining whether the defendant should be tried and sentenced as a Youthful Offender" and the order further reflected that the court conducted a hearing and heard evidence in support of the application); Reese v. State, 381 So.2d 107, 115 (Ala.Cr.App.1980) (wherein a youthful offender investigation report was contained in the record); Morgan v. State, supra, at 1015 (wherein a probation and parole supervisor testified that he conducted an investigation of the appellant pertaining to a youthful offender petition at the request of the court and, prior to ruling on the application, the trial court conducted a full hearing).
Because there is no indication of any investigation or examination of the appellant by the trial court before denying his request for youthful offender treatment, this cause relating to the request by appellant Bi Tran is due to be remanded to the trial court with instructions to investigate and examine the appellant at a hearing and determine whether in its discretion the appellant should be tried as a youthful offender.
REMANDED WITH INSTRUCTIONS AS TO APPELLANT BI TRAN; AFFIRMED AS TO APPELLANTS LONG VAN NGUYEN AND THANH BA TIET.
All the Judges concur except BOWEN, P.J., concurs in result only.

*594 ON RETURN TO REMAND
McMILLAN, Judge.
There has now been submitted to this court a second supplemental transcript, which was not in the record on appeal and which contains language from the trial court indicating that youthful offender status was denied based on the nature of the crime and the totality of the circumstances. As this finding evidences some examination by the trial court, the trial court's order is affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.
NOTES
[1] This cause was submitted to this Court on February 16, 1986, but was originally assigned to a supernumerary judge.
[2] The translation as to this point was unclear.
[3] We note that apparently the defense counsel also had problems with these names, as he identified this witness in his brief as "Nguyen Huu Than."