## 30984. HILL *v.* THE STATE.

DECIDED SEPTEMBER 28, 1945. REHEARING DENIED DECEMBER 10, 1945.

300

*W. A. Wooten, D. C. Chalker, Thomas A. Jacobs Jr.,* for plaintiff in error.

*Charles H. Garrell, solicitor-general, M. H. Boyer,* contra.

GARDNER, J. ■ The Code, § 24-106, reads: "The rules of the respective courts, legally adopted and not in conflict with the constitution of the United States or of this State, or the laws thereof, are binding and must be observed."

The Code, § 24-2628, provides: "The several judges of the superior courts may convene at the seat of government once in each year, at such time as they, or a majority of them, may appoint, for the purpose of establishing uniform rules of practice throughout

the several circuits; which rules, so established, shall be published immediately after the adjournment of said convention. (Act 1821, Cobb, 460.)" And § 24-2629, in conjunction therewith, provides: "All rules of practice for the superior courts, prescribed by any other authority than that which has, by the preceding section, been deputed to all the judges of the superior courts in convention, shall be null and void and inoperative. (Act 1847, Cobb, 461.)" Rule 2 of the superior courts (Code, § 24-3302) reads: "Arguments of counsel shall be confined to the law and the facts involved in the case then before the court, on pain of being considered in contempt; and in all civil cases questions of law shall be argued exclusively to the court, and questions of fact to the jury. Counsel shall not be permitted, in the argument of criminal cases, to read to the jury recitals of fact or the reasoning of the court as applied thereto, in decisions by the Supreme Court or Court of Appeals." The last sentence in the above-quoted Code section was added by amendment of the judges in assembly on July 2, 1924. The convention of judges had power to amend this rule. See *Snipes* v. *Parker*, 98 *Ga.* 522 (25 S. E. 580).

In *Wilson* v. *State*, 33 *Ga.* 207, 215, the Supreme Court, in commenting upon the wisdom of the legislature in delegating to the judges the authority to make uniform rules of procedure, had this to say: "We think this discretion was wisely and properly reposed. It was not reposed in each judge, severally, to be exercised in the circuit in which he had been specially elected, but in a convention of all the judges, bringing together their wisdom and experience separately acquired, a discretion to be exercised by the majority for the government of all and each. It was manifestly the intention of the legislature, that each judge should conform to the rules of practice thus established, whether they chanced to meet his approval or not, otherwise one great object distinctly stated in the act, 'the establishment of uniform rules of practice in the several circuits,' must fail."

By an act of the legislature approved December 24, 1821 (Cobb's Digest 460), the judges of the superior courts of this State were authorized to pass rules of practice and procedure with the binding effect of statutes. The unhampered exercise of this authority was not disturbed until after a convention of the judges in Atlanta, Georgia, on December 4, 1936. At this convention, a new set of

rules was adopted to become effective January 1, 1937. These new rules not only included therein the rules in effect at the time of this convention, but adopted several new rules. Most, if not all, of these new rules were considered so objectionable to the members of the General Assembly that when they met at the next session thereafter they repealed the authority of the superior court judges to adopt rules in convention as provided in the Code, § 24-106, and enacted a provision in lieu thereof that no rule passed by the judges in convention should become effective unless approved by a legislative act. Ga. L. 1937, p. 464. In other words, the judges might meet as theretofore authorized and make such recommendations to the legislature as to rules of practice and procedure, but such rules would not become effective unless approved by the General Assembly. The same act repealed the objectionable rules passed by the assembly of judges in 1936, as will be seen by reference to the act, but left of force the rule now under consideration as it is now contained in the supplement to the annotated Code, § 24-3319 (the old rule being contained in Code, § 24-3302). It will thus be seen that the effect of the act of 1937, supra, was to leave of force the rules then in effect which the legislature did not specifically repeal. The effect of the act on the rules was prospective and not retrospective. It thus seems clear that, in a criminal case, "counsel shall not be permitted, in the argument . . to read to the jury recitals of fact or the reasoning of the court as applied thereto, in decisions by the Supreme Court or the Court of Appeals." From the recitals of fact in the special ground now under consideration, it can not be doubted that this rule was violated and was prejudicial and harmful to the accused. This is made manifest by the request of the jury, after several hours deliberation, to have reiterated to them the conflicting facts in other cases so that they might apply the reasoning of the appellate courts under the facts of the other cases to arrive at the guilt or innocence of the defendant under the facts of the case on trial, or to be permitted to have the volumes of the reports which contained such facts in such other cases so that they might themselves read them in order to get a clear understanding of their duty under the facts of the case then on trial.

■ The only remaining question to be considered is: Was the objection by counsel for the accused timely made, and were the

rights of the accused as to the benefits and provisions of this rule waived by the failure to make proper objection to the argument of State's counsel? Properly construed, the special ground now under consideration, together with the judge's note thereon, contains two specific objections: first, that the authorities upon which the State relied were not submitted before the argument for the defendant began; and second, the court permitted the recital of facts and the reasoning of the appellate courts in decisions to be read to the jury. With regard to the first of these, we are sure that the court did not commit substantial and prejudicial error. As to this feature, the judge permitted counsel for the defendant additional time in which to reply to the argument of the State as to the cases cited by the State. In *Fort* v. *State,* 3 *Ga. App.* 448 (2) (60 S. E. 282), this court said: "While the party who is entitled to the concluding argument should be required to state to his adversary, before he addresses the jury, the questions of law that he will make in the case, and read or present to him the authorities which he expects to use, this rule does not apply when the only question in the case is one of fact, and there is no controversy as to the law. But the refusal of the court to require the party, before he concludes the argument, to state his points of law, or authorities in support thereof, is no ground for a new trial. The proper practice would be to ask leave to reply to questions of law not presented except in the concluding argument."

Let us now discuss the second objection. When the State's counsel who was to make the concluding argument submitted the authorities which he would discuss in conclusion, counsel for the defendant objected to the court's permitting counsel in conclusion to read the facts in those cases to the jury or in the presence and hearing of the jury; and a number of cases were then called to the attention of the court, containing recitals of fact beneficial to the defendant in comparison with the facts of the case then on trial. In reply to this objection, the judge ruled that he would permit counsel for the defendant such additional time as was necessary to reply to the argument of the State relative to the cited cases. Nevertheless, the court did permit State's counsel to read the facts of those cases to or in the hearing of the jury and to argue their similarity to the facts of the case on trial; and nevertheless, as the court recites in the note overruling this ground, counsel for

the accused spent several minutes presumably discussing the facts in a case cited by counsel for the State as well as one of the cases called to the attention of the court under the objection when made. This opening of the gates of erroneous argument to both sides did not prevent a violation of the rule under question or cure the erroneous ruling. On this principle there are numerous cases which by analogy prove the correctness of our view. Our appellate courts in some of those cases have used very strong language of disapproval. In the celebrated case of *Woolfolk* v. *State,* 81 *Ga.* 551 (8 S. E. 724), the Supreme Court said: "We know of no law allowing offsets of this kind. The admission of illegal testimony on one side will not justify illegal rebutting testimony on the other. 'Two wrongs do not make a right.'" Then again in *Bennett* v. *State,* 86 *Ga.* 401 (12 S. E. 806, 12 L. R. A. 449, 22 Am. St. R. 465), the court said: "To hold that because counsel on one side violates a rule of court in his address to the jury by making statements outside of the evidence, the opposing counsel has the right to violate the rule in like manner, over objections of opposing counsel, would be to turn a court, where justice should be administered according to the rules of evidence and of law, into a town-meeting." In the same decision (page 407), it was said: "In doing this, I am sure that it is scarcely necessary to say that we disclaim any purpose of inflicting a personal censure upon the able and upright judge who presided in the cause, or upon the counsel and the prosecuting officer. If no other reason existed for this disclaimer (and there are many), sufficient reason would be found in the usage of our courts, which has gone very far to sanction the habit referred to. Its practical tendency is bad upon the court, the bar, and the jury. If this were all, perhaps our duty would stop with the expression of such an opinion; but this is not all, for in our judgment it is violative of the rights of the citizen litigant in the courts of justice; and if so, we are not at liberty to stop short of making it cause for a new trial." But it is contended that—even though counsel had objected to counsel for the State reading the recitals of facts in the cases at the time they were submitted, and received an adverse ruling from the court—counsel for the defendant should have again made this same objection at the time counsel for the State was arguing this recital of facts in the cases cited and was drawing therefrom similarities to the facts in the case on trial.

We do not think that it was incumbent upon counsel for the defendant, if indeed it could be said to have been proper for them, to invoke again a ruling of the court on a question which the court had already ruled adversely to the accused. Code, § 24-3306, rule 6 (now § 24-3323, rule 23 of the supplement to the annotated Code), provides: "No attorney shall ever attempt to argue or explain a case, after having been fully heard, and the opinion of the court has been pronounced, on pain of being considered in contempt." There are many other decisions which we might cite as analogous, but we will call attention to only a few others. In *Hill* v. *State*, 41 *Ga.* 484, the court said: "And the law clothes the circuit judges with the highest and most sacred powers; and in all cases, both civil and criminal, it is not only their prerogative right but official duty to watch the progress of the trials before them, and see that the laws are enforced without restraint." Also, in *Kelly* v. *Strouse*, 116 *Ga.* 872 (8-*a*) (43 S. E. 280), the court said: "While it is the duty of counsel to protect the client from wrong and injustice, it is much more the duty of the judge to save the law from being outraged. Neither the laches of the litigant nor the negligence of counsel will absolve the judge from his sworn obligation to administer the law." See also *Augusta & Summerville R. Co.* v. *Randall*, 85 *Ga.* 297 (6) (11 S. E. 706); *Grady* v. *State*, 11 *Ga.* 253 (3). In the instant case, however, notwithstanding the quotations from our Supreme Court contained in the cases cited, we feel that counsel for the defendant in error made a timely and proper objection to the court's permitting counsel for the State to read in the presence of the jury the recitals of facts in the criminal cases and the reasoning of the appellate courts in connection therewith.

The court erred in overruling the motion for a new trial, for the reasons set out in special ground 1.

     *Judgment reversed. Broyles, C. J., concurs.*

MacIntyre, J., concurring specially. A rule of the superior court, as embodied in section 6261 of the Code of 1910, is as follows: "Arguments of counsel shall be confined to the law and the facts involved in the case then before the court, on pain of being considered in contempt; and *in all civil cases* questions of law shall be argued *exclusively* to the court, and questions of fact to the jury." (Italics mine.) *Rome Railroad Co.* v. *Barnett*, 94 *Ga.*

446 (2), (20 S. E. 355). The convention of the superior court judges in July, 1924, amended this rule, which is embodied in section 24-3319 of the Georgia Code (Ann. Supp.), so as to read as follows: "Arguments of counsel shall be confined to the law and the facts involved in the case then before the court, on pain of being considered in contempt; and *in all civil cases* questions of law shall be argued *exclusively* to the court, and questions of fact to the jury. Counsel shall not be permitted, in the argument of *criminal cases,* to read to the jury recitals of fact [not facts stated in the opinion which are necessary to illustrate the principle ruled] or the reasoning of the court as applied thereto, in decisions by the Supreme Court or Court of Appeals." (Italics and brackets mine.)

Section 626 of the Code of 1910 made no specific reference to criminal cases. I think that, if the amendment in question had meant to make the rule in criminal cases the same as in civil cases, it would have merely added the words, "and in all criminal cases," after the words, "in all civil cases." The amendment does not conflict with or change the rule embodied in the former section, nor was it intended to change the rule which the Supreme Court had always applied in criminal cases, but the amendment was made in a concise form so that the rule in criminal cases would accompany the rule in civil cases and be embodied in the same section of the rules of the superior courts, established by the judges in convention, and could be easily codified in the same section.

A clear statement and an explanation of the rule, as it related to the argument of law and facts in criminal cases, was made by Judge Lamar, speaking for the court in *Cribb* v. *State,* 118 *Ga.* 316 (9) (45 S. E. 396) (decided August 11, 1903), as follows: "In a criminal case counsel may read law to a jury with so much of the facts stated in an opinion as may be necessary to illustrate the principle ruled." "Evidence which in one case produced a given result can afford no guide to a jury on the trial of another. A verdict in one case is no standard of what should be done on what may be argued to be a similar case. But while this is true, counsel have the right in a criminal case to read the law to the jury and comment thereon. Of course, for the purpose of making the application, it is frequently necessary to read the facts stated in the opinion, or contained in the report; and wherever they are read for

the purpose of making clear the principle decided, it is entirely proper to read them, as well as the opinion. Of course, the jury must find their verdict on evidence produced for their consideration, and are not to be governed by what other juries have done, or other courts have decided in another case." See, in this connection, *Clark v. State*, 8 *Ga. App.* 757 (2) (70 S. E. 90); *Johnson v. State*, 46 *Ga. App.* 776 (169 S. E. 321). However, since it appears from the assignments of error in the instant case that one of the purposes of reading the evidence to the jury in the other cases was to make the verdicts in those cases a standard of what should be done in what might be argued to be similar cases, of which the instant case was one, I think that the assignment of error relative to this matter was meritorious, and I concur in the judgment of reversal.