Tony Randall Ward was charged with murder allegedly committed on June 7, 1976. At that time, he was 16 years old. He was indicted in September 1976; his trial and conviction occurred in February 1977, when he was 17 years old. Further facts concerning Ward's crime not pertinent here are set forth inWard v. State, 356 So.2d 238 (Ala.Crim.App.) (affirming conviction), cert. denied, 356 So.2d 242 (Ala. 1978).
Ward is currently seeking the issuance of a writ of error coram nobis, maintaining that he received ineffective assistance of counsel at trial in that his lawyer failed to request or move that Ward be transferred back to juvenile court because he was a "child." In essence, Ward is attacking the *Page 1351 
subject matter jurisdiction of the court that convicted him. The trial court declined to issue the writ; the Court of Criminal Appeals affirmed without opinion and denied rehearing. We issued a writ of certiorari to consider that sole issue.
In October 1975, the Alabama legislature passed the Judicial Article Implementation Act, Act No. 1205. Among the sweeping provisions of that Act was Article 5, currently codified, as amended, as Code of 1975, §§ 12-15-1 to -102 (1986 Repl.Vol. and Cum.Supp.1987), pertaining to the treatment of juveniles and related matters in judicial proceedings. This Act was approved on October 10, 1975. On December 1, 1975, this Court concluded by a "Resolution and Order" that Article 5 would not become effective until January 16, 1977. It was during this "interim period" — December 1, 1975, to January 16, 1977 — that Ward committed the offense for which he was convicted. It is, then, this "interim period" with which we are here concerned. The validity of the Resolution and Order, its meaning, and its effect on Article 5 are questions of this Court's rulemaking power, and their resolution is dispositive of the issue before us.
The United States Supreme Court has recently spoken on the subject of the rulemaking powers of federal appellate courts; its statements also have clear application to state appellate courts as well. In Thomas v. Arn, 474 U.S. 140, 146-47,106 S.Ct. 466, 470, 88 L.Ed.2d 435 (1985), that Court stated:
 "It cannot be doubted that the courts of appeals have supervisory powers that permit, at the least, the promulgation of procedural rules governing the management of litigation. Cf. Cuyler v. Sullivan, 446 U.S. 335, 346, n. 10, 100 S.Ct. 1708, 1717, n. 10, 64 L.Ed.2d 333 (1980) (approving exercise of supervisory powers to require district court inquiry concerning joint representation of criminal defendants). Indeed, this Court has acknowledged the power of the courts of appeals to mandate 'procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution.' "
(Citations and footnote omitted.)
This Court has the inherent authority to promulgate and implement rules binding on inferior courts as to which we are charged with superintendence and control. Pankey v. City ofMobile, 250 Ala. 566, 35 So.2d 497 (1948). This authority is rooted in our constitution, which mandates that "[t]he supreme court . . . make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts." Const. of 1901, amend. 328, § 6.11. The reason for our rulemaking authority is the critical necessity of implementing and maintaining a procedural system whereby justice is administered fairly, uniformly, effectively, and expeditiously. Cf. Rule 1, Ala.R.Civ.P. If we were without such authority to serve as the central body charged with promulgating rules effective statewide, the bench and bar alike would undoubtedly be faced with a haphazard crazy-quilt of varying procedures from one circuit to the next, or even from one courtroom to the next. Although the lower courts are left to fashion some rules of practice or procedure for themselves, see, e.g., Ala.R.Civ.P. 83(a), even these rules are subject to our approval.
There are, however, some limitations on our authority to promulgate and effectuate rules. "[R]ules shall not abridge, enlarge or modify the substantive right of any party." Const. of 1901, amend. 328, § 6.11; see also Washington-Southern Nav.Co. v. Baltimore Philadelphia Steamboat Co., 263 U.S. 629,44 S.Ct. 220, 68 L.Ed. 480 (1924); Shewan v. State, 396 So.2d 1133
(Fla.Dist.Ct.App. 1980); Richey v. Richey, 389 S.W.2d 914
(Ky.App. 1965). Nor, generally, can a rule of court enlarge or restrict jurisdiction. See Washington-Southern Nav. Co. v.Baltimore Philadelphia Steamboat Co., supra; State v. BigleyBros., Inc., 53 N.J. Super. 264, 147 A.2d 52 (1958); LancasterNat. Bank v. Whitefield Sav. Bank Trust Co., 92 N.H. 337,30 A.2d 473 (1943); 21 C.J.S. Courts, § 172(b) (1940). Furthermore, "no power of suspending laws shall *Page 1352 
be exercised except by the legislature." Const. of 1901, § 21. With these principles in mind, we turn our attention to the analysis of the issue at hand.
Ward maintains that he was entitled to be treated as a "child" at the time of the proceedings instituted against him and thus to be accorded all of the procedural safeguards of Article 5 of the Act.
Ward correctly points out that the substantive provisions of Act No. 1205 became effective on October 10, 1975, the date it was approved. As a general rule, a statute becomes effective upon approval if the legislature has not otherwise specified a date on which it will take effect. Drs. Lane, Bryant, Eubanks Dulaney v. Otts, 412 So.2d 254 (Ala. 1982); National Sec. Ins.Co. v. Freeman, 281 Ala. 152, 199 So.2d 851 (1967). We are also cognizant that Article 5 of the Act repealed all prior law governing juvenile proceedings and replaced it with a new body of substantive law. See In re Bolden, 358 So.2d 795 (Ala. 1978).
Section 5-102 of the Act provided that "[t]he supreme court shall promulgate rules governing procedure in the juvenile court." This was obviously a matter requiring the utmost haste and attention; all prior procedural law had been expressly repealed by § 5-153 and there were, at that time, no procedural rules to govern juvenile proceedings. The Act did, however, give us express authority to promulgate and implement all rules necessary for the administration of juvenile proceedings. See Judicial Article Implementation Act, Act No. 1205, Regular Session 1975, §§ 5-102, -118, and -120(a).
Having not had the opportunity by the effective date of Act, October 10, 1975, to promulgate what we deemed to be satisfactory, adequate, and effective rules to govern juvenile procedure, we issued a Resolution and Order on December 1, 1975, creating an advisory committee of learned scholars and members of the bench and bar to assist us in promulgating procedural rules that would fully and fairly enable the lower courts to apply the substantive aspects of Article 5. We also, in that Resolution and Order, "conclude[d] that Article 5 shall become effective January 16, 1977, statutory provisions currently effective remaining in full force and effect until that time." See also the Code Commissioner's note to § 12-15-1 (1986 Repl.Vol.) ("This chapter became effective on January 16, 1977 pursuant to a resolution and order of the Alabama supreme court dated December 1, 1975").
From the vantage of hindsight, however, we are persuaded, and are constrained to hold, that our Resolution and Order violated the very letter of § 21 of our constitution. In effect, we attempted to suspend the operation of Article 5 until we were able to promulgate complementary rules; this is forbidden by § 21. The Resolution and Order, insofar as it conflicted with § 21, was void ab initio; it and the Code commissioner's note to § 12-15-1 notwithstanding, Article 5 of the Act became effective when approved on October 10, 1975.
In the context of juvenile proceedings, a party's age is a component of the court's subject matter jurisdiction. The juvenile court has subject matter jurisdiction over crimes committed by persons under a certain age; in this manner, age is inextricably tied to the jurisdiction of juvenile courts. As of October 10, 1975, when Article 5 became law, "under seventeen" at the time of the offense became the age limit for the exercise of subject matter jurisdiction by the juvenile court during the period pertinent to this appeal. Our Resolution and Order attempted to suspend Article 5 and temporarily reactivate the former juvenile code provisions; this would have made the subject matter jurisdictional age limit "under sixteen." Because the Resolution and Order, if valid, would have restricted the subject matter jurisdiction of the juvenile courts, we must likewise conclude that it was ineffective. Because the regulation of subject matter jurisdiction is not within the province of this Court, we must conclude that Article 5 of the Act became effective when approved.
Thus far we have held that the substantive portion of Article 5 became effective *Page 1353 
in 1975, albeit without a procedural counterpart to carry forth its purpose. What rules of procedure applied? When a legislature fails to act in prescribing methods of procedure by which its law will be given effect, parties are relegated to the former practice of court. Hill v. State, 73 Ga. App. 293,36 S.E.2d 191 (1945); State ex rel. Blood v. Gibson Circuit Court,239 Ind. 394, 157 N.E.2d 475 (1959); In re Pye, 21 A.D. 266,47 N YS. 689 (1897).
Therefore, Ward was entitled to the benefits of theprocedural provisions of the Code of 1940, which were in effect until the new Rules of Juvenile Procedure became effective, such provisions to be applied in conjunction with thesubstantive provisions of Article 5 of Act No. 1205. This is so because the measuring age of Article 5 was "under seventeen" at the time of the offense; Ward obviously qualified.
Article 5 created substantive rights for qualified juveniles, which this Court's rules could not abridge. Const. of 1901, amend. 328, § 6.11. Ward was denied his day in juvenile court and thereby denied his substantive right. Therefore, we must hold that he is entitled to the issuance of a writ of error coram nobis.
Accordingly, the judgment of the Court of Criminal Appeals is reversed, and this case is remanded to that court with instructions to order the trial court to issue the writ of error coram nobis.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.