[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 376 
Mario Burks, the appellant, was indicted for the capital robbery-murder of 83-year-old George G. Hale, Jr. A jury found the appellant guilty of the lesser included offense of felony murder and he was sentenced to life imprisonment. In this appeal from that conviction, the appellant raises two issues through appointed counsel and 26 issues in his pro se brief.
 I.
The crime occurred on February 16, 1989. On February 20, 1989, the then 18-year-old appellant was taken into custody and was questioned by officers of the Birmingham Police Department. The appellant was informed of and waived the constitutional rights set forth in Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The appellant was not informed that "[i]f his counsel, parent, or guardian is not present, that he has a right to communicate with them, and that, if necessary, reasonable means will be provided for him to do so." Rule 11(A)(4), A.R.Juv.P.
Rule 11(A) applies when "the child is taken into custody." The Alabama Rules of Juvenile Administration do not define the term "child." Indeed, under the reasoning of the Supreme Court in Ex parte Ward, 540 So.2d 1350 (Ala. 1988), it is highly questionable that the court has the authority to fashion such a definition. " '[R]ules shall not abridge, enlarge or modify the substantive right of any party.' *Page 377 
. . . Nor, generally, can a rule of court enlarge or restrict jurisdiction." Ward, 540 So.2d at 1351.
At the time of the crime, a "child" was defined by statute as follows:
 "[The term 'child,'] after December 31, 1977, means an individual under the age of 18 or under 19 years of age and who committed the act of delinquency with which he is charged before reaching the age of 18 years."
Ala. Code 1975, § 12-15-1(3)(b).[1]
The appellant was born on December 10, 1970. He reached his 18th birthday in December 1988. On February 16, 1989, the date of the crime, the appellant was 18 years, 2 months, and 6 days old. By statutory definition, the appellant was not a child. Therefore, Rule 11 has no application.
The appellant relies on the recent Alabama Supreme Court case of Ex parte Jackson, 564 So.2d 891 (Ala. 1990), wherein that Court stated:
 "We issued a writ of certiorari to address one issue:
 'Whether an 18-year-old defendant's confession should be suppressed when he is not told of his right, guaranteed by law, to consult with his parents, and later it is determined that he should be tried as an adult.'
". . . .
 ". . . The Court held [in Ex parte Whisenant, 466 So.2d 1006 (Ala. 1985)]: 'If any one or more [of the Rule 11(A)] warnings are omitted, the use in evidence of any statement given by the child is constitutionally proscribed.' 466 So.2d at 1007.
 "Jackson argues that under Whisenant his motion to suppress is due to be granted, because [Officer] Fowler did not inform him of his rights pursuant to Rule 11(A)(4), as Whisenant requires. Jackson argues that he should have been informed of his right to consult with his parents even though he might later be tried as an adult, and that his confession should have been suppressed. The State argues that the trial court's determination that Jackson was to be tried as an adult cures the error committed by Fowler in failing to inform Jackson of his constitutional rights as a juvenile.
 "We agree with Jackson that the alleged confessions are due to be suppressed. . . . Accordingly, the trial court's determination that Jackson was to be tried as an adult did not cure the error made by Fowler in failing to advise Jackson of his constitutional rights as a juvenile."
Jackson, 564 So.2d at 891-93.
Age was not an issue in Jackson. The only mention of the appellant's age in the opinion, other than in the specific issue framed by the Supreme Court and quoted above, is found in the statement of the facts that "[a]t the hearing on that motion [to suppress], Fowler testified that when he interrogated Jackson, he thought Jackson was 18 or 19." Id. at 892.
This Court takes judicial notice of the record filed in this Court on the direct appeal in Jackson. Jackson's exact date of birth is not clear from that record, which indicates that it was June 17 of either 1968 or 1969. Depending on which birthdate is used, Jackson was either 19 years, 9 months, and 4 days old or 18 years, 9 months, and 4 days old on the date of the crime (March 21, 1988). The attorney general candidly admits that in Jackson, the State's briefs filed in the Court of Criminal Appeals and in the Supreme Court failed to address the fact that an 18-year-old is not a child. Apparently, this fact was never presented to, or considered by, either this Court or the Alabama Supreme Court. While this Court is bound by the decisions of the Alabama Supreme Court, we do not interpret Jackson as extending Rule 11 to *Page 378 
an 18-year-old or to any person not within the statutory definition of a "child" pursuant to § 12-15-1(3)(b).[2] This Court holds that the appellant was not a "child" at the time of the crime. Therefore, he was not entitled to be advised of his "juvenile Miranda rights" under Rule 11.
 II.
The argument is made that the trial court erred in allowing the appellant to be tried as an adult when he was eligible to be treated as a youthful offender, that the judge denied youthful offender treatment based solely on the crime charged, and that there was not a full and fair hearing on the appellant's youthful offender application.
Initially, we note that the youthful offender application was filed by defense counsel over the appellant's objection. One of the reasons defense counsel cited to support his request for a pretrial mental competency examination of the appellant was because "my client instructed me that he d[oes]n't want to apply for youthful offender." R. 166. The appellant argued that his decision not be seek youthful offender status was "rational," R. 228, and was based on "a lot of different reasons," R. 230
Furthermore, the statements of the trial judge refute the appellant's allegation that the denial of youthful offender treatment was summary and without proper consideration or investigation.
Prior to trial, the following occurred:
 "MR. JONES [one of the appellant's defense counsel]: I was noticing that Mr. Blalock [appellant's other defense counsel], on behalf of Mr. Burks, applied for youthful offender and it was summarily denied.
 "THE COURT: I don't know if it was summarily denied, but it was denied.
 "MR. JONES: It was denied without a report being ordered by Your Honor from the Probation Office. My review of the law is that youthful offender status should not be denied simply because of the seriousness of the nature of the offense.
 "THE COURT: I agree with you 100%. But at the time I knew enough at the time it was made that the Court did not feel it needed it. I had heard certain things in this courtroom officially that I had sufficient information to base it on.
"MR. JONES: Would you put that on the record?
"THE COURT: It's in the record.
 "MR. JONES: I mean what specific information you had.
 "THE COURT: I don't think you've got the right to ask any judge what specifically did you use. I used a culmination of all that I have heard about this defendant as well as certain information I had — somebody was transferred.
 "MR. JONES: McConico [the appellant's codefendant] was transferred from Family Court.
 "THE COURT: And I had certain information in the file.
 "MR. JONES: My point is, Your Honor, you did not allow the probation offices to provide a total background on my client.
 "THE COURT: I agree with you. I agree with you. Who's ever said that the probation office gives a total background?
"MR. JONES: I mean the usual and customary report.
 "THE COURT: I had substantially more that I ever need or get from the probation office.
"MR. JONES: As it relates to McConico.
 "THE COURT: Oh, no. To this man and to McConico. And I heard certain information in this courtroom that relates to this man.
 "MR. JONES: In the alternative, Your Honor, at this point, this being May 14, 1990, Your Honor went through one trial with Maurice McConico wherein the jury returned a verdict of guilty of felony murder and the Court sentenced him to life. I think this would be a good time and I ask the Court to consider youthful offender treatment on the basis that the *Page 379 
evidence is uncontroverted that Maurice McConico was the individual who dealt the fatal blows to Mr. Hale.
"THE COURT: Based on what? My hearing the trial?
"MR. JONES: Evidence that came out at trial.
". . . .
 "THE COURT: I don't think this is a case for YO. I think it would be an error. I don't think this is a case that the legislature intended to include under YO."
R. 528-32, 544.
Contrary to the appellant's argument, the trial judge did not deny youthful offender status "solely and only upon a consideration of the nature of the crime charged." Watkins v.State, 357 So.2d 156, 160 (Ala.Cr.App. 1977), cert. denied,357 So.2d 161 (Ala. 1978) (emphasis omitted). The record affirmatively reflects that the trial judge was familiar with this particular appellant and with the circumstances of the crime through his participation in the trial of the appellant's accomplice, Maurice McConico. See McConico v. State,575 So.2d 1256 (Ala.Cr.App. 1990) (conviction for felony-murder affirmed by memorandum). See also M.B.M. v. State, 563 So.2d 5
(Ala.Cr.App. 1989) (appeal from the order of the juvenile court transferring codefendant McConico to circuit court).
"While the trial judge may not deny youthful offender status simply because of the nature or type of crime with which the accused is charged, it is entirely proper for a denial to be based on the manner in which the crime was executed, which would of necessity involve some form of investigation or examination." McCovery v. State, 365 So.2d 358, 360
(Ala.Cr.App. 1978), quoted in Petty v. State, 548 So.2d 632,635 (Ala.Cr.App.), cert. denied, 548 So.2d 636 (Ala. 1989).
 "The Youthful Offender Act vests in the trial judge almost absolute discretion to grant or deny youthful offender status after making an appropriate investigation. McClendon v. State, 341 So.2d 174 (Ala.Cr.App. 1976); Section 15-19-1, Code of Alabama 1975. This act does not require a full, formal hearing or an investigation by a probation officer in every case. Clemmons v. State, 294 Ala. 746, 749, 321 So.2d 238 (1975). . . . This court will not overturn that exercise of discretion except where it affirmatively appears that the decision of the trial judge was arbitrary or made without some examination or investigation of the youthful offender. Watkins v. State, 357 So.2d 156
(Ala.Cr.App.), cert. denied, 357 So.2d 161 (Ala. 1977)."
Morgan v. State, 363 So.2d 1013, 1015 (Ala.Cr.App. 1978), quoted in Nguyen v. State, 547 So.2d 582, 593 (Ala.Cr.App. 1988). In determining whether to grant or deny youthful offender status, "[n]o prescribed format is required." Goolsbyv. State, 492 So.2d 635, 636 (Ala.Cr.App. 1986). This Court affirmed the trial court's denial of youthful offender status in Goolsby, where "[t]he trial judge stated that he had 'independent knowledge' of appellant's prior record." Goolsby, 492 So.2d at 636.
 "As we read the [youthful offender] statute, the requirement that an investigation be made means only that the trial court should conduct or order such investigation as is necessary in each case, including an investigation by the probation officer, if it sees fit, but not necessarily, for the development of such facts as are required for a determination of whether the defendant is eligible for youthful offender treatment.
". . . .
 "We do not believe the legislature intended that each case must be referred to a probation officer for an investigation. Nor do we read the statute to require a full, formal hearing in every case. All that is required of the trial court, assuming the defendant consents, is such investigation and examination of the defendant as is sufficient to enable the judge to make an intelligent determination of whether, in his discretion, the defendant is eligible to be treated as a youthful offender, rather than being tried, and if found guilty, sentenced in the normal criminal process." *Page 380 
Clemmons v. State, 294 Ala. 746, 748-49, 321 So.2d 238, 241
(1975). Here, the record shows that the decision of the trial judge was neither arbitrary nor made without some examination and investigation. There is no basis for overturning the denial of the defendant's request for youthful offender status.Garrett v. State, 440 So.2d 1151, 1153 (Ala.Cr.App. 1983) .
 III.
Although the appellant was represented by two appointed attorneys at trial and by one appointed attorney (different from trial counsel) on appeal, the trial judge permitted the appellant to act as "co-counsel" both at trial and on appeal. "[A]n individual does not have a right to hybrid representation. . . . Rather, the decision to permit a defendant to proceed as co-counsel rests in the sound discretion of the trial court." Cross v. United States,893 F.2d 1287, 1291-92 (11th Cir.), cert. denied, ___ U.S. ___,111 S.Ct. 138, 112 L.Ed.2d 105 (1990).
In a pro se brief filed April 26, 1991, the appellant raises 26 additional issues. The allegations contained in the appellant's brief are confusing and disorganized, sometimes to the point of being unintelligible and incoherent. Most of the issues are not supported by legal authority. Most of the appellant's references to specific pages in the record on appeal do not sustain the argument for which they are cited. In such cases as that presented here, the appellate courts of this state have not been reluctant to hold that the appellant has waived the alleged errors. "The law is settled that ' "[w]here an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant." ' " McConico v. McKibben,581 So.2d 829 (Ala. 1991). Accord, Vinzant v. State, 462 So.2d 1037
(Ala.Cr.App. 1984). Errors assigned and not argued will be treated as abandoned. See Edgil v. City of Carbon Hill,214 Ala. 532, 533, 108 So. 355, 356 (1926). Issues listed in brief but not argued will not be reviewed on appeal. Jackson v.State, 265 Ala. 690, 692, 93 So.2d 808, 810 (1957). "[A]llegations . . . not expressly argued on . . . appeal . . . are deemed by us to be abandoned." United States v. Burroughs,650 F.2d 595, 598 (5th Cir.), cert. denied, 454 U.S. 1037,102 S.Ct. 580, 70 L.Ed.2d 483 (1981).
Nevertheless, we address each issue raised by the appellant. Although we dispose of these issues in summary fashion, we have carefully considered each issue.
1) The appellant contends that his confession was coerced and obtained in violation of his right against self-incrimination. He alleges that he was physically beaten and assaulted by the police. This issue was fully explored and developed both in a pretrial hearing on a motion to suppress and at trial. The issue rests on which witness the trial judge chose to believe. Although the trial judge's finding of voluntariness was based on conflicting testimony, his decision is supported by substantial evidence. "The finding of the trial court [that a confession is voluntary] will not be disturbed on appeal unless it appears contrary to the great weight of the evidence or is manifestly wrong." Ex parte Bankhead, 585 So.2d 112, 126 (Ala. 1991). "Where the voluntariness inquiry presents conflicting evidence and the trial judge finds that the confession was voluntarily made, great weight must be given his judgment."Williams v. State, 461 So.2d 834, 838 (Ala.Cr.App. 1983), reversed on other grounds, 461 So.2d 852 (Ala. 1984). It is obvious to this Court that the trial judge simply did not believe the appellant's testimony that he was physically beaten and was coerced into confessing.
In arguing this issue, the appellant also contends that there was no probable cause for his arrest, that the State knowingly used perjured testimony in securing an arrest warrant, that the evidence seized pursuant to his arrest was inadmissible, that his $200,000 bond was excessive, that he was not properly treated as a juvenile, and that the prosecution failed to disclose to the appellant the exculpatory evidence found in the two statements of a codefendant. All but two of these issues are addressed in other portions of this opinion. *Page 381 
It appears that the issue of probable cause for arrest was never raised or litigated at trial and is not preserved for review by this Court. "Matters not objected to at trial cannot be considered for the first time on appeal, since review on appeal applies only to rulings by the trial court." Adams v.State, 585 So.2d 161, 164 (Ala. 1991).
Contained in the record is a pro se "motion to suppress defendant's confession." Ground six of that motion states: "The constitutional rights of the defendant were violated in the following manner: Violation of Miranda Rights; illegal detention before arrest; illegal arrest; unlawful coercion." R. 3386. That motion does not bear any filing stamp to indicate that it was filed in the circuit clerk's office.
To the extent that this issue was preserved for review, the record contains sufficient facts for this Court to conclude that there was probable cause for the appellant's arrest and that there was no illegal detention. There is no indication that perjured testimony was used in securing the arrest warrant.
The issue of the alleged denial of a reasonable bond is not cause for a reversal of the appellant's conviction. The mere fact that a defendant was improperly detained or held is not ground for quashing or dismissing the indictment. See Aaron v.State, 271 Ala. 70, 76, 122 So.2d 360, 364-65 (1960). Prior to trial, defense counsel did request a "reduction in bond." R. 408. However, the trial judge never ruled on that request. Furthermore, the appellant never challenged the amount of his bond in a petition for writ of habeas corpus. "Under the laws and practice in Alabama, habeas corpus is the proper remedy to challenge either the denial or excessiveness of bail." Clay v.State, 561 So.2d 1116, 1118 (Ala.Cr.App. 1990).
The appellant argues that he was entitled to reasonable bond because the proof was not evident nor the presumption great that he was guilty of the capital offense. See Ex parte Bynum,294 Ala. 78, 82, 312 So.2d 52, 55 (1975). However, " '[w]here one is imprisoned [for a capital offense] by virtue of an indictment he is presumed to be guilty in the highest degree, and to be entitled to bail as of right, must overcome this presumption by proof.' " Livingston v. State, 40 Ala. App. 376,377, 116 So.2d 396, 397 (1959).
2) After the jury had been deliberating, the jury informed the trial judge that they did not receive two "Miranda rights forms." The trial judge instructed the jury that "[t]hey spoke about that but it was not allowed into evidence." R. 2506 There was no objection to this matter at trial.
3) The appellant argues that the "tape entered in evidence at the trial was a [duplicate] of the original and was never predicated to be true." Appellant's pro se brief at 28. This issue was not preserved at trial by any objection. R. 2069.
4) Although the appellant was indicted for a capital offense, he was convicted of the noncapital offense of felony-murder and was properly sentenced by the trial judge and not by the jury. See Ala. Code 1975, § 13A-5-1(a).
5) Under the facts of this case, the trial judge properly instructed the jury on the criminal offense of felony-murder as a lesser included offense of capital murder. See § 13A-5-41;Garrett v. State, 369 So.2d 833, 837 (Ala. 1979). Although it appears that defense counsel questioned such a charge at a conference held before the prosecution had rested its case-in-chief, R. 2119, defense counsel also indicated that a charge on felony-murder was "fine," R. 2109. Furthermore, defense counsel announced "satisfied" at the conclusion of the court's oral charge. Thus, this issue is not preserved for review. Rule 14, A.R.Crim.P.Temp. (now Rule 21.2, A.R.Crim.P.). See Thompson v. State, 405 So.2d 717, 719-20 (Ala.Cr.App.), cert. denied, 405 So.2d 721 (Ala. 1981).
6) The sentence of life imprisonment is within the statutorily prescribed range of punishment for the crime of felony-murder. § 13A-6-2(a)(3) and (c); § 13A-5-6(a)(1). This sentence is neither excessive nor constitutionally disproportionate to the severity of the offense. Solem *Page 382 v. Helm, 463 U.S. 277, 108 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Moreover, this issue was not raised at trial.
7) Since the appellant was approximately 18 years and two months old on the date of the crime, he was not a "child" as defined by Ala. Code 1975, § 12-15-1(3)(b), and was not entitled to a juvenile transfer hearing under § 12-15-33 before being prosecuted as an adult in circuit court. Furthermore, the record contains a "memorandum" from the appellant to court-appointed counsel in which the appellant states: "I prefer and am requesting the motion to be tried as an [sic] juvenile be omitted from the court docket. I request and demand my constitutional right to be tried by jury as an adult." R. 3277.
8) The appellant alleges that he was not charged with capital murder prior to the preliminary hearing, and that there was no arraignment on the capital charge. These allegations are factually groundless and are not supported by the record, which affirmatively contradicts and refutes these contentions.
9) The appellant argues that with proper medical treatment, the victim could have survived more than one year after the assault, and that, therefore, he could not have been convicted of murder.
On the night of February 16, 1989, 83-year-old George G. Hale, Jr., was brutally assaulted. He suffered extensive brain damage and remained in a comatose and vegetative state until his death. On February 20, Mr. Hale was taken off a respirator and medication was discontinued. On March 2, tube feeding was discontinued. Mr. Hale died on March 5, 1989, 17 days after the assault.
Pathologist Robert M. Brissie testified that Mr. Hale's "injury was incompatible with life for any appreciable interval in a matter of months or a year," R. 1916, and that the "possibility of any survival over a matter of a relatively short intermediate term would be miniscule." R. 1918. Dr. Brissie testified that Mr. Hale "came to his death or demise as a result of complications resulting from extensive blunt force trauma to the head with extensive brain injuries." R. 1903. Neurosurgeon Richard Morawetz testified that "[w]e might have been able to keep Mr. Hale alive for six to 12 weeks with absolute maximal therapy." R. 1945.
The common law "year-and-a-day rule" prevails in Alabama. SeeFlannagin v. State, 48 Ala. App. 559, 563, 266 So.2d 637, 641
(1971), affirmed, 289 Ala. 177, 266 So.2d 643 (1972). However, "the general rule is [that] the defendant cannot escape the penalties for an act which in point of fact produces death, because death might possibly have been averted by some possible mode of treatment." Tate v. State, 23 Ala. App. 122, 123,122 So. 461, 462, cert. denied, 219 Ala. 361, 122 So. 462 (1929). The fact that the victim was not kept alive by means of life support systems and extensive medical treatment is without legal significance in a prosecution for homicide where the defendant inflicted the fatal wounds. The appellant's argument is without legal and factual merit.
10) The appellant contends that he was not allowed to make a statement before sentencing. There was no objection to this matter at trial.
The court reporter's record positively shows that on May 21, 1990, immediately after the verdict of the jury was announced, the trial judge denied the appellant's oral request for a presentence report and sentenced the appellant without asking the appellant if he had anything to say. R. 2517-18. The minute entry, in pertinent part, states: "The defendant, Mario Burks, being asked by the Court if he has anything to say why the judgment and sentence of the law should not be pronounced upon him says, see Court Reporter notes." R. 3353.
In Alabama, an allocution is mandatory before sentencing for a felony. As this Court stated in Duncan v. State,587 So.2d 1260, 1264 (Ala.Cr.App. 1991):
 "It is without dispute that, prior to sentencing a defendant convicted of a felony, 'the sentencing court must ask the convicted person if he has anything *Page 383 
to say as to why the sentence of law should not be imposed on him.' Ex parte Anderson, 434 So.2d 737, 737-38 (Ala. 1983). Accord, Rule 8(b)(1), A.R.Crim. P.Temp. (now rule 26.9(b)(1), A.R.Crim.P.). Both the judgment entries and the case action summary entries in the appellant's cases recite that allocution occurred prior to the imposition of sentence. However, there is nothing in the court reporter's transcript of the sentencing hearing that could be deemed an allocution. Compare Jones v. State, 555 So.2d 333, 336 (Ala.Cr.App. 1989) (' "Anything further from anybody now before I take this recess" ' sufficient as "[t]here are no magic words that a trial judge must recite before a defendant is afforded a proper allocution").
 " 'It is well settled that recitals in the judgment [entry] import absolute verity, unless contradicted by other portions of the record.' Harper v. City of Troy, 467 So.2d 269, 272
(Ala.Cr.App. 1985); Traylor v. State, 466 So.2d 185, 188 (Ala.Cr.App. 1985). In this case, the judgment entries are contradicted by the court reporter's transcript. Where such a conflict exists, this Court must 'remand th[e] cause to the trial court with directions to resolve the conflict and determine if a proper allocution did in fact occur. If there was no allocution, the trial court is directed to conduct a new sentencing hearing in which a proper allocution is provided.' Ebens v. State, 518 So.2d 1264, 1269 (Ala.Cr.App. 1986) . . ., followed in Maul v. State, 531 So.2d 35, 36
(Ala.Cr.App. 1987)."
(Footnote omitted.)
Therefore, this cause is remanded to the circuit court with directions that the trial judge resolve the conflict in the record and determine if a proper allocution did in fact occur. If there was no allocution, the trial court is directed to conduct a new sentencing hearing in which a proper allocution is provided. The trial court is directed to make a return to this Court showing compliance with these instructions within 60 days from the date of this opinion.
11) The appellant argues that he was denied the effective assistance of counsel because the trial judge refused to allow him to call a material witness. The page of the record cited by the appellant shows that the appellant, against the advice of counsel, wanted to call Ricky Lee Johnson to testify. Defense counsel represented to the trial judge that Johnson's counsel "informed me yesterday that he didn't feel that his client should be testifying." R. 2171. The trial judge then stated, "But we will have to get Mr. Parsons [Johnson's attorney] here before we do anything with his client." R. 2172.
On a separate occasion, the appellant "want[ed] to reserve Byron Cathey to come back to the [witness] stand." R. 2207. This request was made immediately after Cathey had testified as a defense witness to the appellant's reputation for non-violence. The trial judge informed the appellant that Cathey's testimony would be limited to the appellant's reputation for peace and quiet. R. 2207 The trial judge did not respond to the appellant's comment that Cathey could "testify to the fact that [the appellant] never wore any kind of brown hat or any kind of hat." R. 2207-08. The record simply does not show that the trial judge refused to allow the appellant to call either Johnson or Cathey as a witness. Nothing is preserved for review in this regard because the record does not show an adverse ruling by the trial judge denying the appellant's request for either witness.
We find no legal merit to the appellant's argument that he was denied the effective assistance of appellate counsel because the trial judge allowed that counsel to argue the motion for a new trial without having a trial transcript. The motion for new trial was filed by the appellant pro se. The record contains no request that the hearing on the motion for new trial be continued until a transcript of the trial was provided. This issue was not presented to the trial judge and was not preserved for review. Furthermore, the appellant has failed to show that counsel's performance fell below an objective standard of reasonableness, *Page 384 
and that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
12) Here, the State's evidence was more than adequate to prove that the appellant was a participant in the felony-murder of Mr. Hale. Under the principles collected in White v. State,546 So.2d 1014, 1016-1018 (Ala.Cr.App. 1989), the verdict of the jury is supported by the evidence.
The appellant's argument that the testimony of the accomplice was not corroborated is without merit because there was no accomplice testimony presented at his trial.
13) The appellant alleges that the identification testimony of the eyewitness was perjured and that it was used by the prosecution with knowledge of the perjury. This argument is apparently based on the contention that the eyewitness gave inconsistent statements. However, any inconsistent statements made by the witness were presented to the jury. Where a witness makes contradictory statements as to the material facts, the jury may look to such contradictory statements in order to determine what credence they will give to that testimony. SeePitts v. State, 140 Ala. 70, 83, 37 So. 101, 105 (1904). " 'Inconsistencies and contradictions in the testimony of a witness do not make it inherently improbable.' Arnold v. State,33 Ala. App. 146, 147, 30 So.2d 587 (1947). 'It is not the law that mere contradicting statements or declarations of a witness are sufficient to raise a reasonable doubt in the minds of the jury as to the truth of the testimony of a witness.' Walters v.State, 24 Ala. App. 370, 373, 135 So. 600 (1931)." Jones v.State, 469 So.2d 713, 717 (Ala.Cr.App. 1985). See also Hooperv. State, 585 So.2d 137 (Ala. 1990) (prior inconsistent statement may be used as substantive evidence under certain conditions). Here, there simply has been no showing that any testimony presented by the State was perjured. Ex parteFrazier, 562 So.2d 560 (Ala. 1989).
14) The appellant alleges that the appellant's "age group" was underrepresented on the grand jury and that the prosecutor systematically excluded members of the appellant's "age group" from the jury venire. The appellant was 18 years old at the time of the crime. He was 19 years old at the time of trial. Among the qualifications for jury service is that a person must be over the age of 19 years. Ala. Code 1975, § 12-16-60(a)(1).
After the appellant had been arraigned and entered a plea to the indictment, the appellant filed a pro se "plea in abatement — grand jury not properly constituted," in which he alleged: "Defect in the array and poll of grand jury. The members of the Afro-American race of the youth class (ages 18-21) were excluded from the grand jury. It was not selected, drawn, or summoned as prescribed by law. Iowa Code Anno * * 770.3." R. 3263. The record contains no ruling on this plea. That plea was untimely and preserved nothing for review. Bogan v. State,529 So.2d 1029, 1030 (Ala.Cr.App. 1988). Moreover, the appellant has presented no evidence that there was any type of fraud or discrimination in the drawing or composition of the grand jury.
The appellant also alleges that the prosecution systematically excluded members of his age group from the jury venire. Again, there is absolutely nothing in the record before this Court to support this allegation.
15) The appellant maintains that the trial court erred in failing to grant a change of venue on the basis of prejudicial pretrial publicity. Early in the proceedings, the record shows that the appellant specifically stated that he did not want a change of venue. R. 280. However, later the necessity for a change of venue was argued by his attorney. R. 384.
There is nothing in the record to show that pretrial publicity either actually prejudiced an individual juror or caused pervasive hostility within the community. See Murphy v.Florida, 421 U.S. 794, *Page 385 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); Ex parte Fowler, 574 So.2d 745,747-48 (Ala. 1990).
16) The appellant argues that error was committed in the admission into evidence of a computer print-out without a proper foundation having been established for accuracy and authenticity. This objection was never raised in the trial court.
In its case on rebuttal, the prosecution elicited the testimony of pharmacist Nancy Wolfe. Through her, the prosecution introduced a computer record of prescriptions filled at the Big B Drugstore on First Avenue North in Birmingham, Alabama, on February 16, 1989. This testimony was introduced to rebut the defense testimony of Imogene Williams. Ms. Williams stated that on the night of February 16, 1989, the appellant's mother had had a prescription filled for her at a Big B, and that when Mrs. Burks returned from the drugstore the appellant was with her. Defense counsel objected to the admission of the report because Ms. Williams could not testify that the prescription was filled at the Big B on First Avenue North. R. 2244-52. At trial, the accuracy and authenticity of the Ms. Wolfe's record was not questioned. "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on ground not assigned at trial." Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987).
17) The appellant argues that the trial court erred in failing to grant the motion for an expert forensic pathologist at state expense to determine the cause of the victim's death. Our search of the record reveals no such motion or request. The pages of the record cited by the appellant ("R-276, 647, 00032") have nothing to do with any request for an expert forensic pathologist. This issue was not preserved for review.
18) We find no merit to the appellant's contention that the trial court committed error in allowing the prosecutor to cross-examine the appellant about a statement he had given to the police on February 27, 1989, without a "proper foundation establishing its accuracy and authenticity." Appellant's pro se brief at 32. The voluntariness of that statement was established by the testimony of Birmingham Police Detective Forrest Duncan in the State's case in chief.
19) The issue of a fatal variance between the offense charged in the indictment, capital murder, and the evidence at trial is not present in this case because the appellant was convicted of the lesser included offense of felony-murder.
20) The appellant contends that the trial judge erred in failing to instruct the jury "on a lesser charge of murder without a weapon" and upon manslaughter in the second degree. Appellant's pro se brief at 32. At present and at the time of the offense there were no such crimes in the State of Alabama. Furthermore, this issue has not been preserved for appellate review. The jury charges requested by the appellant are not contained in the record on appeal. Defense counsel announced "satisfied" with the oral charge of the trial judge. In addition, there is no rational basis for a verdict of manslaughter as defined in Ala. Code 1975, § 13A-6-3, or of criminally negligent homicide under § 13A-6-4.
21) In his closing argument to the jury, the assistant district attorney stated that the victim "didn't ask to have his head bashed in by Mario Burks." R. 2466. Defense counsel objected and requested a mistrial on the ground that this statement was not supported by the evidence. However, the trial judge never ruled on the objection or request for a mistrial. "The general rule is that improper argument of counsel is not a ground for a new trial or subject to review on appeal unless there is due objection by counsel or motion to exclude, a ruling thereon by the court . . . or a refusal of the court to make a ruling." Espey v. State, 270 Ala. 669, 674,120 So.2d 904, 907 (1960).
There was evidence that the appellant pushed the victim down, but there was no direct evidence that the appellant personally "bashed in" the victim's head. However, with equal force, that evidence also *Page 386 
shows that the appellant was an accomplice of McConico, who did the actual beating. Because the appellant was an accomplice, he was legally accountable for McConico's actions. As an accomplice, he was just as guilty of Mr. Hale's murder as if he had personally inflicted the fatal injuries. Ala. Code 1975, § 13A-2-20, § 13A-2-21, § 13A-2-23. The prosecutor's argument was a legitimate inference from the evidence based on the law of complicity.
The appellant's argument that there was no evidence to show he was an accomplice because the codefendant did not testify is without merit.
The appellant contends that the trial judge refused to allow the jury to hear the evidence of the guilt of the codefendant. Appellant's pro se brief at 32. From the record pages cited by the appellant, this Court can only assume that the appellant is referring to the fact that the jury was given a "substitute" taperecording to consider during their deliberation. The comments of the trial judge indicate that the actual taperecording which was played for the jury during the trial "had something about something that doesn't have anything to do with this tape [of the appellant's statement] on it." This Court can only assume that the taperecording played for the jury at trial contained evidence relating to McConico's guilt, which was not heard by the jury. R. 2506 Obviously, this issue was not preserved for review.
22) The appellant argues that the trial judge erred "in reading the charge to the jury and not directly to the defendant to allow him to plea." Appellant's pro se brief at 32. Apparently, this has reference to the arraignment. The record contains no objection to this matter and it has not been preserved for review. The record of the appellant's arraignment consists of the following statement in the court reporter's transcript: "Defendant, Mario Burks, arraigned in open court." R. 87. The minute entry shows that the appellant was represented by counsel at his arraignment and further recites: "Defendant was read from indictment of the charges against him and defendant pleads not guilty. . . . A copy of the indictment with said charges was given to defendant." R. 3351.
23) After the foreperson of the jury read the verdict in open court, the following appears in the court reporter's transcript of the record: "(The Court then polled the jury, each juror answering in the affirmative that this was his or her individual verdict.)." R. 2515. There was no objection to this matter. We find no error in the fact that the record does not reflect the response of each juror. The minute entry states: "The jury was polled in open Court with all affirming the verdict." R. 3353.
24) The appellant's contention that the trial judge became a "fact finder" is not supported by any evidence in the record. The record pages cited by the appellant to support his contention relate to the trial court's oral charge of the jury. However, nowhere in his oral charge does the judge give a summary of the material evidence he wants the jury to consider as alleged by the appellant. Appellant's pro se brief at 32. This issue was not preserved for review by objection in the trial court.
25) The appellant argues that error was committed in closing argument when the district attorney urged the jury as "tax payers" to return a verdict of guilty. This contention is not supported by the record and was not preserved for review by any objection. The record shows that the prosecutor did refer to "law-abiding citizens" and to the "citizens of Jefferson County." R. 2467. The record does not reflect any reference to "tax payers."
26) There is nothing in the record to support the appellant's argument that the indictment was amended. The record does indicate that the appellant was originally charged with robbery but that he was charged with capital murder after the victim died. R. 243. However, there is nothing to indicate that any robbery indictment, if there was one, was "amended." Furthermore, "[a]n indictment is not subject to abatement because another charge is pending against the defendant for the same offense." Camp v. State, 359 So.2d 1187, 1189 (Ala.Cr.App. 1978). *Page 387 
For the reasons stated in Part III(10) of this opinion, this cause is remanded to the circuit court for further proceedings.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.
[1] Section 12-15-1(3)(b) was amended June 30, 1990, to define a "child" as "an individual under the age of 18, or under 19 years of age and before the juvenile court for a matter arising before that individual's 18th birthday." Ala. Code 1975, § 12-15-1(3) (Supp. 1990). "Absent a clear expression in the Statute [or Rule] to the contrary, we think the law applicable at the time of the offense was intended to govern the offense, the offender, and all proceedings incident thereto, and we so hold." Bracewell v. State, 401 So.2d 123, 124 (Ala. 1979).
[2] We note that § 12-15-1(3) (Supp. 1990) is primarily a change in wording from former § 12-15-1(3)(b). The new statute does not change the age limits in defining "child."