Roger Benson appeals from his conviction on a charge of harassment, in violation of City of Sheffield ordinance no. 8-83-1, which adopts § 13A-11-8(a)(1)(b), Ala. Code 1975. Harassment is a Class C misdemeanor. Based on his plea of guilty, Benson was convicted; he was sentenced to 90 days' imprisonment and was ordered to pay a $300 fine plus court costs. His sentence was suspended "on general good behavior" for two years. Benson did not receive actual jail time in sentencing. Benson argues that the trial court committed reversible error when it failed to inquire sua sponte into his indigency status and to appoint a lawyer to represent him before allowing him to enter a plea of guilty.
The record reflects that Benson was originally represented by retained counsel, but before trial, the trial court granted that lawyer's motion to withdraw. The lawyer withdrew from the case because Benson had failed to pay him an agreed upon retainer. Benson appeared pro se at his trial hearing, having agreed to accept a plea agreement offer made by the prosecutor. At the beginning of the guilty plea inquiry, the following took place:
 "MR. MILAM [Prosecutor]: I represent the City. He had an attorney who withdrew, James Atkinson.
"THE COURT: You don't have an attorney now?
"DEFENDANT: No, sir.
 "THE COURT: Do you understand you are charged with the crime of harassment?
"DEFENDANT: Yes, sir.
"THE COURT: Which is a Class C misdemeanor?
"DEFENDANT: Yes, sir.
"THE COURT: Have you gone over this form?
"DEFENDANT: Yes.
"THE COURT: Who did you go over it with?
"DEFENDANT: Me and Pam looked over it.[1]
 "THE COURT: You are representing yourself, do you understand?
"DEFENDANT: Yes."
(R. 3.) The trial court then proceeded with its inquiry into Benson's understanding of his rights:
 "THE COURT: Do you understand you are entitled to a jury trial?
"DEFENDANT: Yes.
"THE COURT: Did you sign this form?
"DEFENDANT: The one that said I'm guilty?
 "THE COURT: The Explanation of Rights Form and Plea of Guilty Form.
"DEFENDANT: Yes.
"THE COURT: You went over the form?
"DEFENDANT: Yes.
"THE COURT: Do you have any questions about it?
"DEFENDANT: No, sir."
(R. 4.) The trial court thus determined that Benson had gone over and signed the Explanation of Rights Form, which included an explanation of the right of an indigent person to have counsel appointed to represent him, and the court then determined that Benson understood the terms of his plea agreement. Benson never claimed he was indigent and that he could not afford to pay his retained counsel. In *Page 1061 
fact, during the entire proceeding, Benson never even indicated that he wanted legal representation — either retained or appointed.
Although this case does not involve complex legal issues, it has, nevertheless, revealed a problematic and conflicting area of the law. The ever burgeoning caseload of appellate courts often hinders us from the careful and detailed analysis required for the orderly development of legal principles. The history of how the issue raised in this case has been treated by this court highlights this problem. Consequently, a more detailed review of the pertinent caselaw is necessary.
In Argersinger v. Hamlin, 407 U.S. 25, 37-40 (1972), the United States Supreme Court held:
 "[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at trial.
". . . .
 "Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts.
 "The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of `the guiding hand of counsel' so necessary when one's liberty is in jeopardy."
The Argersinger Court expressly reserved ruling on "the requirements of the Sixth Amendment as regards the right to counsel where [actual] loss of liberty is not involved." Id.407 U.S. at 37. In Scott v. Illinois, 440 U.S. 367, 373 (1979), in which the United States Supreme Court affirmed an indigent appellant's conviction for theft that was obtained without the benefit of counsel in a case where imprisonment was authorized, but in which the appellant was only fined $50, the Court wrote:
 "[T]he central premise of Argersinger — that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment — is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointed counsel."
In Salter v. State, 470 So.2d 1360, 1362 (Ala.Cr.App. 1985), this court held that "the constitutional right to counsel is limited to criminal offenses resulting in actual imprisonment." This court followed the guidelines in Argersinger and Scott and chose not to enlarge the rights of those persons convicted of misdemeanors who were not sentenced to actual imprisonment.
We cited these cases in Jowers v. City of Selma,688 So.2d 278 (Ala.Cr.App. 1996), a case with similar circumstances as those presented here. In holding that the appellant did not have a right to counsel in a misdemeanor in which a suspended sentence was imposed, we wrote:
 "[The appellant's] sentence of probation does not constitute actual imprisonment. Therefore, under Argersinger, Scott, and Salter, [the appellant's] Sixth Amendment rights were not violated. If in the future, the trial court revokes [the appellant's] probation and sentences him to jail, that revocation may constitute a violation of [the appellant's] Sixth Amendment right to appointed counsel. However, we will not reverse the trial court on the mere possibility that, at a remote and future date, [the appellant's] Sixth Amendment right may be violated."
Jowers v. City of Selma, 688 So.2d at 279.
We note that in Williams v. City of Phenix City,659 So.2d 1004 (Ala.Cr.App. 1995), *Page 1062 
this court held that a conditionally suspended sentence of imprisonment could not be imposed on an indigent defendant who had been denied counsel. However, in that case, the trial court conditioned the defendant's release on the payment of the fines and court costs, and the defendant's inability to pay resulted in an actual imprisonment. In the case before us, at the time of the hearing, the trial court was aware of the plea agreement for a suspended sentence conditioned only on general good behavior and imposed such a sentence after accepting the defendant's guilty plea. Benson was never subjected to a deprivation of liberty. In Culberson v. State, 709 So.2d 1327
(Ala.Cr.App. 1997), this court, citing only Williams, also held that an indigent misdemeanor defendant was entitled to counsel even though he was sentenced to a conditionally suspended sentence. In Culberson, the defendant, acting pro se, pleaded guilty to two counts of reckless endangerment and one count of harassing communications and was sentenced to 12 months' confinement for each count, those sentences to run concurrently. The sentences were suspended and Culberson was placed on 24 months' supervised probation. On the issue whether the trial court erred in not advising Culberson of his right to counsel, this court acceded to the request of the State and remanded the case to the trial court for a hearing to determine whether Culberson was indigent and to determine whether Culberson was properly advised of his right to counsel and whether he waived his right to counsel.[2] In doing so, this court relied only onWilliams, and completely ignored this court's more recent application of Argersinger, Scott, and Salter as set out inJowers.
We hold that, because Benson's sentence did not include actual imprisonment and because there were no conditions that resulted in Benson's imprisonment before he was placed on probation, there was no Sixth Amendment right to counsel for Benson to affirmatively waive. This court's holding in Jowers is the correct interpretation of the law concerning a defendant's Sixth Amendment right to counsel. Unless an appellant has actually suffered a deprivation of liberty, there is no Sixth Amendment right to counsel in a misdemeanor prosecution in which a suspended sentence was imposed. We should not reverse the trial court "on the mere possibility that, at a remote and future date, [Shelton's] Sixth Amendment right may be violated" should there be a later attempt to revoke his probation and impose a sentence of confinement. Jowers v. City of Selma, 688 So.2d at 279.
It is certainly "best practice" for all trial courts that handle misdemeanor cases to fully advise defendants of their rights and to obtain signed waivers of the right to counsel. Nevertheless, extending all the protections afforded defendants facing felony charges to those misdemeanor defendants who are not in danger of being incarcerated, as this court did in Williams, would be a huge leap from where the law has been in Alabama. It is time for this court to reapply the holdings in Salter andJowers. To the extent Williams and Culberson hold that a misdemeanor defendant is entitled to counsel if sentenced to conditionally suspended confinement, regardless of whether the defendant is actually incarcerated, those cases are overruled.
The trial court did not err when it did not sua sponte conduct an inquiry to determine Benson's indigency and, if it found Benson indigent, to advise him of the right to appointed counsel and then to determine whether Benson was affirmatively waiving such a right. The right to counsel did not exist in this case. The judgment of *Page 1063 
the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
McMillan and Fry, JJ., concur. Baschab, J., dissents.
Long, P.J., joins dissent.
[1] The record does not further identify "Pam."
[2] The case was also remanded for the trial court to vacate the sentence of 12 months' confinement and the $750 fine imposed on the conviction of harassing communications, a Class C misdemeanor, and to resentence Culberson on that count because the imposed sentence exceeded the sentence limitations provided by statute (3 months' confinement and a $500 fine).