On Return to Remand
This case was originally assigned to another judge. It was reassigned to Judge Cobb on March 11, 1999.
The appellant, Lereed Shelton, was convicted of third-degree assault in the district court. See § 13A-6-22, Ala. Code 1975. He appealed his conviction to the Etowah Circuit Court for a trial de novo; he was again convicted of third-degree assault. The circuit court sentenced him to 30 days' confinement, but suspended the sentence and placed him on unsupervised probation for two years. As a condition of his probation, Shelton was also ordered to pay a $500 fine, court costs, and $516.69 in restitution. In this opinion, we address the trial court's order on return to remand and the issues raised by Shelton that we did not address in our first opinion. See Shelton v. State, *Page 88 
[Ms. CR-97-1313, October 2, 1998] 851 So.2d 83, 87 (Ala.Cr.App. 1998).
 I.
On October 2, 1998, we remanded this cause for the trial court to determine whether the appellant made a knowing, intelligent, and voluntary waiver of his right to counsel. In its order on return to remand, the trial court made the following findings:
 "1. Although the Defendant never made a statement on the record specifically waiving his right to counsel, it is the opinion of this Judge that the Defendant fully understood his right to employ counsel and in fact did a creditable job of defending his own case both at the District and Circuit Court levels.
 "2. Repeatedly during the trial of his case, the Court informed the defendant about the problems of [his] representing himself and the fact that he was a lay-person would not allow him to circumvent the rules of evidence.
 "3. The defendant appeared to be an intelligent, articulate, shrewd businessman fully aware of what was going on in the courtroom and aware of the criminal charge against him and the possibilities of punishment (he was found guilty in District Court and received a fine and [was] ordered to pay restitution)."
In our October 2 opinion, we held that Shelton has a constitutional right to counsel. See Shelton, 851 So.2d at 87. However, in so holding, we overlooked clear precedent to the contrary. Upon reconsideration, we find that Shelton did not have a Sixth Amendment right to counsel because he did not receive a sentence that resulted in actual confinement.
We apply the same rationale we applied in Benson v. City of Sheffield,737 So.2d 1059, 1061 (Ala.Cr.App. 1999):
 "In Argersinger v. Hamlin, 407 U.S. 25, 37-40 (1972), the United States Supreme Court held:
 "`[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at trial.
". . . .
 "`Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts.
 "`The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of "the guiding hand of counsel" so necessary when one's liberty is in jeopardy.'"
The Argersinger Court expressly reserved ruling on "the requirements of the Sixth Amendment as regards the right to counsel where [actual] loss of liberty is not involved." Id. at 37. In Scott v. Illinois,440 U.S. 367, 373 (1979), the United States Supreme Court affirmed an indigent appellant's conviction for theft; the conviction was obtained without the benefit of counsel in a case where the only punishment imposed was a $50 fine, although imprisonment was authorized. The Court wrote:
 "[T]he central premise of Argersinger — that actual imprisonment is a penalty different in kind from fines or the mere *Page 89 
threat of imprisonment — is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointed counsel."
In Salter v. State, 470 So.2d 1360, 1362 (Ala.Cr.App. 1985), this court held that "the constitutional right to counsel is limited to criminal offenses resulting in actual imprisonment." This court followed the guidelines set out in Argersinger and Scott and chose not to enlarge the rights of those persons convicted of misdemeanors who were not sentenced to actual imprisonment.
We cited this same caselaw in Jowers v. City of Selma, 688 So.2d 278
(Ala.Cr.App. 1996), in deciding a case with similar circumstances. In holding that the appellant did not have a right to counsel in a misdemeanor case in which the sentence was suspended, we wrote:
 "[The defendant's] sentence of probation does not constitute actual imprisonment. Therefore, under Argersinger, Scott, and Salter, [the defendant's] Sixth Amendment rights were not violated. If in the future, the trial court revokes [the defendant's] probation and sentences him to jail, that revocation may constitute a violation of [the defendant's] Sixth Amendment right to appointed counsel. However, we will not reverse the trial court on the mere possibility that, at a remote and future date, [the defendant's] Sixth Amendment right may be violated."
688 So.2d at 279-80.
Our October 2, 1998, opinion, authored by Judge Baschab, cited Williamsv. City of Phenix City, 659 So.2d 1004 (Ala.Cr.App. 1995), a case that preceded Jowers, as precedent for its holding that Shelton had a Sixth Amendment right to counsel. In Williams, this court held that a conditionally suspended sentence of imprisonment could not be imposed on an indigent defendant who had been denied counsel. However, in that case, the trial court conditioned the defendant's release on the payment of the imposed fines and costs, and the defendant's inability to pay resulted in actual imprisonment. While Shelton's suspension was also conditioned on the payment of fines and court costs, there is no indication in the record that he was ever actually confined because of an inability to pay.
The October 2, 1998, opinion also cited Culberson v. State,709 So.2d 1327 (Ala.Cr.App. 1997). In Culberson, the defendant, acting pro se, pleaded guilty to two counts of reckless endangerment and one count of harassing communications; he was sentenced to 12 months' confinement for each count, the sentences to run concurrently. The sentences were suspended, and Culberson was placed on 24 months' supervised probation. On the issue whether the trial court erred in not advising Culberson of his right to counsel, this court acceded to the State's request and remanded the case to the trial court for a hearing to determine Culberson's indigence, to determine whether Culberson was properly advised of his right to counsel, and to determine whether he waived his right to counsel.[1] In doing so, this court relied only onWilliams, and completely ignored its more recent application ofArgersinger, Scott, and Salter in Jowers. *Page 90 
This court will not apply the holding in Williams in a situation where there is no evidence in the record that the appellant has actually been deprived of liberty because of the conditions of release from confinement. When the record reflects that the appellant received a suspended sentence of confinement for a misdemeanor conviction and was never subjected to actual imprisonment, this court's holding in Jowers is the correct interpretation of the law concerning a defendant's Sixth Amendment right to counsel. Unless an appellant has actually suffered a deprivation of liberty, there is no Sixth Amendment right to counsel in a misdemeanor prosecution in which a sentence was suspended. We will not reverse the trial court "on the mere possibility that, at a remote and future date, [Shelton's] Sixth Amendment right may be violated" by a later attempt to revoke his probation and impose a sentence of confinement. Jowers, 688 So.2d at 280.
It is certainly the "best practice" for all trial courts when disposing of misdemeanor cases to fully advise defendants of their rights and to obtain signed waivers of the right to counsel. Nevertheless, extending all the protections afforded defendants facing felony charges to those misdemeanor defendants who are not in danger of being incarcerated would be a huge leap from the current state of the law in Alabama. It is time for this court to reapply the holdings in Salter and Jowers. We herby overrule Williams and Culberson, to the extent that those opinions hold that a misdemeanor defendant is entitled to counsel if the defendant is sentenced to conditionally suspended confinement, regardless of whether the defendant is actually incarcerated.
Because Shelton never was actually imprisoned, he had no Sixth Amendment right to counsel, and there was no requirement for the trial court to inform him of such a right or to determine whether he intelligently waived such a right. The trial court did not err when it did not conduct an inquiry to determine Shelton's indigence and, had it found Shelton indigent, to advise him of the right to appointed counsel or to determine whether Shelton was affirmatively waiving such a right.
 II.
Shelton contends that his lack of arraignment invalidates his conviction. Specifically, Shelton argues that Rule 14.1(c), Ala.R.Crim.P., governs the trial court and affirmatively requires arraignment in an appeal de novo to a circuit court. We agree, but because Shelton failed to object to his lack of arraignment, he waived arraignment by remaining silent. See Johnston v. City of Irondale,671 So.2d 777, 779 (Ala.Cr.App. 1995) (defendant appealed to the circuit court for a trial de novo and waived arraignment by failing to object to his lack of arraignment); Singleton v. City of Tuscaloosa, 557 So.2d 565,566 (Ala.Cr.App. 1990) (citing Watts v. State, 460 So.2d 204 (Ala. 1983)). Moreover, the purpose of arraignment is to ensure that the accused is familiar with the charges brought against him. SeeSingleton, 557 So.2d at 567. Because Shelton was tried in the district court for the same charge, he was familiar with the charge brought against him in the circuit court. In addition, Shelton testified that he remembered pleading not guilty in the district court to third-degree assault. (Supp.R. 42.)
 III.
Shelton alleges that the State prosecuted him for third-degree assault in an effort to compel him to pay the victim, Kenny Campbell, for property damage to *Page 91 
Campbell's car.[2] At the close of a preliminary hearing, the trial judge asked the parties if they had any further matters to discuss before trial. The State responded:
 "Nothing further, Judge, except that [Kenny Campbell] just wants his truck paid for and he is willing to accept payment for his truck and go on about his business. If Mr. Shelton might be willing to do that."
(R. 8-9.) The trial judge stated that he refused to get involved in settling a civil case and instructed the parties that he would hear only evidence concerning the alleged assault. (R. 9.) Shelton argues that the State's remarks indicated that the motivation for prosecuting Shelton was to collect a private debt.
Shelton failed to properly preserve this issue for review. Shelton should have objected when the State made these remarks or filed a motion to dismiss, asserting this ground. See King v. State, 401 So.2d 226, 232
(Ala.Cr.App. 1981); Harris v. State, 378 So.2d 257, 262 (Ala.Cr.App. 1979). Even if Shelton had properly preserved this issue, his argument is without merit. This prosecution did not arise because Shelton allegedly owed Campbell money; it arose because Shelton punched Campbell with his fists, in violation of § 13A-6-22, Ala. Code 1975. SeeHolland v. State, 440 So.2d 1236 (Ala.Cr.App. 1983).
 IV.
After the jury began its deliberations, a juror sent a note to the trial judge asking, "Was the fact that Mr. Shelton did not take any action to resolve this problem — could that be abetting the action in the altercation?" (C. 80.) Upon receipt of the note, the trial judge stated that he would recharge the jury on the concepts of aiding and abetting in an effort to solve the confusion. (R. 158.) Both the State and Shelton agreed to the supplemental charge. (R. 159.) After the trial judge recharged the jury, Shelton informed the trial judge that he was satisfied with the supplemental charge. (R. 162.)
On appeal, Shelton contends that the trial judge did not adequately respond to the juror's inquiry. Shelton has waived this issue because he failed to object to the trial judge's supplemental instruction. SeeMurphy v. State, 641 So.2d 1256, 1260 (Ala.Cr.App. 1993). Moreover, at trial, Shelton stated that he was satisfied with the instruction.
 V.
During a preliminary hearing, the State made a motion in limine, requesting that Shelton be prohibited from referring to, during his opening statements, a prior conviction of Kenny Campbell, the victim, for possession of a marijuana. (R. 3.) The trial judge granted the State's motion, holding that Shelton could not refer to the evidence in his opening statement but that he could try to admit the evidence to impeach Campbell when Campbell testified. (R. 5-6.) Shelton argues that the trial judge's ruling denied him his right to include a statement of what he expected the evidence to show in his opening statement. *Page 92 
A trial judge's decision to grant or deny a motion in limine is within the judge's sound discretion. See Zasadil v. City of Montgomery,594 So.2d 231, 232 (Ala.Cr.App. 1991); Primm v. State, 473 So.2d 1149,1158 (Ala.Cr.App. 1985). Moreover, the scope of an opening statement rests "within the sound discretion of the trial judge." Hunt v. State,659 So.2d 933, 941 (Ala.Cr.App. 1994). The trial judge did not abuse his discretion by preventing Shelton from referring to the convictions in his opening statement because Shelton's argument is without merit. The purpose of an opening statement is for "`each party to give the jury an overview of what the evidence will show.'" Frazier v. State,758 So.2d 577, 602 (Ala.Cr.App. 1999) (quoting McKinney v. State,654 So.2d 95, 98 (Ala.Cr.App. 1995)).
In his brief, Shelton contends that he should have been able to refer to the prior conviction because the main issue was the credibility of Campbell, the victim. He cites Rule 609(a)(1), Ala.R.Evid., as authority. Shelton, however, has misconstrued Rule 609. Rule 609 does provide for a method of attacking the credibility of a witness with prior convictions. See Baxter v. State, 723 So.2d 810, 819 (Ala.Cr.App. 1998); Rule 404(a)(3), Ala.R.Evid. (listing Rule 609 as a valid form of impeachment). The credibility of a witness, however, is not at issue until the witness actually takes the stand to testify. See Rule 404(a)(3), Ala.R.Evid., Advisory Committee's Notes (citing C. Gamble,Character Evidence: A Comprehensive Approach 56 (1987)); C. Gamble,McElroy's Alabama Evidence, § 140.01(1)(a) (5th ed. 1996). Thus, the trial judge correctly granted the State's motion in limine, prohibiting Shelton from referring to the prior conviction until Campbell testified.
 VI.
Shelton contends that the trial court erred when it failed to grant his motion for a mistrial, which he made during the testimony of Officer Debbie Barnett. Shelton called Officer Barnett as a witness in an effort to elicit testimony concerning a prior complaint Shelton filed against Campbell. (R. 86.) The record indicates that the officer was unsure of the subject matter of her testimony. In fact, her testimony showed that she thought she was being called to testify for another case. During Shelton's direct examination of Officer Barnett, the following occurred:
 "[SHELTON]: Ms. Barnett, I'm Lereed Shelton from Mountaintop — did they ever approach you about swearing a warrant out or getting charges brought against Mr. Kenny Campbell?
"[OFFICER BARNETT]: This [case concerns] Mr. Campbell?
"[SHELTON]: Yes.
 "[OFFICER BARNETT]: I'm sorry, Mr. Shelton. I thought this [case] was [about] the assault charge that Michael Sanders made against you back in — when I took the picture back in 1994, which is not on this case. I'm sorry.
"[DEPUTY DISTRICT ATTORNEY]: May we approach the bench?
"THE COURT: All right.
 "UNIDENTIFIED WITNESS: That is on a sexual abuse case, a case with my daughter.
"[OFFICER BARNETT]: No, not on this one, that's another one.
"[SHELTON]: I object.
 "[OFFICER BARNETT]: That's not the same one. That's another one.
"THE COURT: Wait a minute. Time out.
"[SHELTON]: I would like a mistrial."
(R. 84-85.) A sidebar discussion followed, and Shelton told the trial judge his purpose *Page 93 
for calling Officer Barnett to testify. Shelton seems to have based his motion for a mistrial on the ground that Officer Barnett's answer was nonresponsive. (R. 86.) The trial judge sustained Shelton's objection, striking the response from the record, but the trial judge did not rule on Shelton's motion for a mistrial.
Absent a timely objection and an adverse ruling, nothing is preserved for appellate review. See Pace v. State, 714 So.2d 332, 334 (Ala. 1997) (citing Biddie v. State, 516 So.2d 846 (Ala. 1997)). The portion of the record reproduced above indicates that Shelton failed to obtain an adverse ruling on his motion. It is the appellant's duty to preserve an issue by obtaining an adverse ruling on the record. See Berryhill v.State, 726 So.2d 297, 302 (Ala.Cr.App. 1998). Shelton made no effort to elicit an adverse ruling; thus, this issue is procedurally barred from our review. Moreover, Shelton neither requested nor objected to the trial judge's failure to give a curative instruction. See Goodwin v. State,728 So.2d 662, 671 (Ala.Cr.App. 1998); Davis v. State, 740 So.2d 1115,1130 (Ala.Cr.App. 1998).
 VII.
Shelton argues that the trial judge misinformed him, during his sentencing hearing, about the period that Shelton had for filing post-trial motions. He claims that this misinformation violated his due process rights. After the trial judge sentenced Shelton, the trial judge instructed him as follows:
 "You have the right to appeal the case, if you want to, to the Court of Criminal Appeals, and if you want to do that, you have got to do it within 42 days, counting today. If you cannot afford an attorney or a transcript and you can show that you are indigent, then we would appoint you an attorney and furnish you with a free transcript. You are free to file any post trial motions and appeal, but you must do so within 42 days. Do you understand that?"
(R. 168.) In his brief, Shelton claims that he understood the trial judge to be instructing him that he had 42 days to file a post-trial motion, instead of 30 days, which is the correct number of days. See
Rule 24, Ala.R.Crim.P. This issue is moot because the record does not show that Shelton attempted to file any post-trial motions after 30 days.
 VIII.
Shelton contends that the trial judge improperly ordered him to pay restitution. Specifically, Shelton argues that a trial judge must hold a restitution hearing, which did not occur in this case, before the judge can order the accused to pay restitution. Shelton correctly cites § 15-18-67, Ala. Code 1975, in support of his argument. He failed, however, to properly preserve the issue for appellate review. Shelton should have objected at trial to the trial judge's failure to conduct a restitution hearing. See Perkins v. State, 715 So.2d 888, 892
(Ala.Cr.App. 1997); Dollar v. State, 687 So.2d 207, 208 (Ala.Cr.App.), rev'd on other grounds, 687 So.2d 209 (Ala. 1996).
 IX.
Shelton argues that the trial court committed reversible when it failed to give Shelton the opportunity to make a statement in his own behalf prior to imposing the sentence. Rule 26.9(b)(1), Ala.R.Crim.P., mandates that a trial court give a defendant an opportunity to make a statement in his behalf before the imposition of his sentence. See, also, Davis v.State, 747 So.2d 921, 925 (Ala.Cr.App. 1999). All defendants are "entitled to an allocution, regardless of the gravity of the *Page 94 
sentence imposed." Id. (citing Rule 26.9, Ala.R.Crim.P., Committee Comments). Moreover, the failure to afford a defendant an allocution renders his sentence erroneous. See Lancaster v. State, 638 So.2d 1370,1373 (Ala.Cr.App. 1993).
The judgment order contained in the record indicates that Shelton was afforded an allocution, but the transcript of the sentencing hearing does not show that Shelton was afforded that opportunity before the trial judge imposed sentence. (C. 16; R. 164-67.) In reading the transcript of the sentencing hearing, we note that Shelton did make comments and express concerns to the trial court. Before the imposition of sentence, the trial judge asked Shelton and the district attorney about the sentence that Eddie Shelton, Shelton's son, had received for the same assault. The following occurred,
 "[SHELTON]: That case don't have anything to do with this one, your Honor. Why should —
 "THE COURT: Well, I know. I'm just trying to set the sentence now. The jury — $516.69 is what is in the evidence.
"[STATE]: That is what we would submit then.
 "THE COURT: Okay. Thirty days suspended, $516.69 restitution, $500 fine, which is what [the trial judge in Eddie Shelton's case] did.
"[SHELTON]: That is not what the other sentence was.
 "THE COURT: Well, this is a whole new day. You got a new day in court. I can set the sentence. I can give you a year . . . and not suspend the sentence.
"[SHELTON]: Okay.
 "THE COURT: But I'm not going to do that. Thirty days suspended, $500 fine, $516.69 restitution.
"[STATE]: Two years' unsupervised probation?
"THE COURT: Yes, unsupervised probation. Anything further?"
(R. 166-67.) Although the transcript indicates that the trial judge allowed Shelton to make statements during his sentencing, the trial judge failed to make it clear that Shelton had a right to make a statement in his behalf to the court. This opportunity is absolutely required. See
Rule 26.9(b)(1), Ala.R.Crim.P., Committee Comments; Burks v. State,600 So.2d 374, 382 (Ala.Cr.App. 1991). Even though the trial judge was not required to invoke any "magic" words, the transcript does not make it clear that Shelton understood that he had a right to make a statement as to why his sentence should not have been imposed. See Jones v. State,555 So.2d 333, 336 (Ala.Cr.App. 1989) (stating that even though the trial judge did not use any magic words, the record reflects that the defendant was, in fact, given the opportunity to make a statement). Because the transcript does not clearly indicate that Shelton was aware of this right, a discrepancy exists between the transcript and the judgment order; therefore, this case must be remanded to the trial court to determine if Shelton was afforded allocution. See Davis, supra; Burks,600 So.2d at 383. If the trial court determines that Shelton was not given the opportunity to make a statement in his behalf before the imposition of his sentence, the trial court must conduct a new sentencing hearing and allow for a proper allocution. The trial court shall take all necessary action to allow return to remand to be filed with this court within 42 days of the date of this opinion.
 X.
Shelton contends that his trial was unfair because of the cumulative effect of the trial judge's rulings, the prosecutor's conduct, and the conduct of the prosecution's *Page 95 
only witness, Campbell. Specifically, Shelton argues that he should be granted a new trial because (1) he was not represented by counsel, (2) he was never arraigned, (3) he was not fully informed of the charges against him or his possible range of punishment, (4) the district attorney's complaint against him was insufficient, (5) the trial judge improperly restricted the scope of his opening statement, (6) the trial judge's preliminary instructions to the jury did not properly characterize the charge against him, (7) Campbell's self-serving statements during his testimony prejudiced Shelton, (8) the prosecutor improperly asked Campbell leading questions during direct examination, (9) the trial judge failed to instruct the jury to disregard the unresponsive statement made by Officer Barnett, (10) the trial judge did not properly respond to the jury's inquiry during deliberations, (11) he was not afforded allocution, and (12) the trial judge incorrectly informed him that he had 42 days in which to file any post-trial motions.
We have addressed Shelton's issues 1, 2, 5, 9, 10, 11, and 12 in this opinion. In addition, we addressed Shelton's fourth issue in our first opinion dealing with this case. See Shelton v. State, [Ms. CR-97-1313, October 2, 1998] 851 So.2d 83, 91 (Ala.Cr.App. 1998).
Shelton contends that he was not fully informed of the charge against him or of the possible range of punishment. Shelton has failed to preserve either issue for review. See Biddie, 516 So.2d at 847. In addition, Shelton was not entitled to be informed of the maximum and minimum possible punishment, because he did not enter a guilty plea. Moreover, Shelton tried his case in the district court before appealing for a trial de novo in the circuit court; thus, he was well aware of the charge against him.
Shelton did not properly preserve his argument that the trial judge's preliminary instructions to the jury improperly characterized the charge against him. No objection appears on the record. See Rule 21.3, Ala.R.Crim.P.; Phillips v. State, 726 So.2d 292, 293 (Ala.Cr.App. 1998). Moreover, Shelton's claim is without merit. A review of the instructions indicates that the trial judge did nothing more than explain the elements of assault in the third degree, as defined in § 13A-6-22, Ala. Code 1975, and recite the charge as alleged in the complaint. (R. 12-14.) These instructions did not mischaracterize third-degree assault.
Shelton argues that his trial was prejudiced by what he says was Campbell's self-serving testimony during direct and cross-examination. Shelton failed to preserve this issue for review because he failed to object on this basis at any point during Campbell's testimony. SeeBiddie, 516 So.2d at 847. Shelton also contends that the prosecutor improperly asked Campbell leading questions during direct examination, but he failed to preserve the issue by objecting to the manner of questioning on this ground. See id.
For the above-mentioned reasons, Shelton's conviction of assault in the third-degree is due to be affirmed and the case remanded to ensure that Shelton was afforded allocution.
AFFIRMED AS TO CONVICTION AND REMANDED.* *Page 96 
McMillan and Fry, JJ., concur. Baschab, J., dissents, with opinion in which Long, P.J., joins.
[1] The case was also remanded for the trial court to vacate the sentence ordering 12 months' confinement and imposing $750 fine on the conviction for harassing communications, a Class C misdemeanor, and to resentence Culberson on that count because the sentence exceeded the limitations provided by statute (three months' confinement and a $500 fine).
[2] The record indicates that prior to the physical confrontation retween Shelton and Campbell, Shelton and Campbell were involved in an automobile collision, which resulted in damage to Campbell's car. (R. 17-21.) Campbell allegedly unsuccessfully attempted to obtain reimbursement from Shelton for the damage. (R. 22-24.) The State presented evidence showing that Campbell went to a store where Shelton worked to gain information about Shelton's insurance company. Shelton's son began "slugging" Campbell. While Shelton's son and another man held Campbell, Shelton repeatedly hit Campbell in the ribs and the face. (R. 25-27.)
* Note from the reporter of decisions: On August 20, 1999, on the return to second remand, the Court of Criminal Appeals affirmed without opinion. On September 24, 1999, that court denied rehearing, without opinion. On May 19, 2000, the Supreme Court granted certiorari review and AFFIRMED IN PART; REVERSED IN PART; AND REMANDED (1990031). On October 27, 2000, the Supreme Court denied rehearing, without opinion.